HENRY S. REDDIG AND THELMA D. REDDIG, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELMER J. KALAT AND RUTH E. KALAT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64233, 64234. Filed September 30, 1958.

*George Farr, Jr., Esq.*, for the petitioners.
*Maurice B. Townsend, Jr., Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies and additions to tax in these consolidated cases, as follows:

| Docket No. | Year | Income tax | Additions to tax | |
|---|---|---|---|---|
| | | | Sec. 294 (d) (2) | Sec. 294 (d) (1) (A) |
| 64233 | 1952 | $18,144.36 | $1,777.60 | $2,962.68 |
| | 1953 | 16,599.18 | 1,704.85 | 2,841.42 |
| 64234 | 1952 | 447.46 | 155.58 | 241.99 |
| | 1953 | 471.34 | 156.37 | 241.02 |

The issue is whether respondent was correct in not recognizing as a partner in the Maxwell Company partnership, the trustee of certain trusts created by the petitioners for the benefit of their children. The issues under sections 294 (d) (2) and 294 (d) (1) (A) were not contested by the petitioners at the trial and they were not argued on brief. Consequently, they must be deemed to have been abandoned.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby found accordingly.

Henry S. Reddig and Thelma D. Reddig, husband and wife, are the petitioners in Docket No. 64233. They reside in Ashtabula, Ohio. Their Federal income tax returns for the years before us were filed with the district director of internal revenue at Cleveland, Ohio. Elmer J. Kalat and Ruth E. Kalat, husband and wife, are the petitioners in Docket No. 64234. They reside in Bedford, Ohio. Their Federal income tax returns for the years before us were filed with the district director of internal revenue at Cleveland, Ohio.

Prior to January 1, 1952, the Maxwell Company was operated as a partnership with Henry S. Reddig, Thelma D. Reddig, and Elmer J. Kalat as sole partners, the interests of said partners being as follows:

| | Per cent |
|---|---|
| Henry S. Reddig | 45 |
| Thelma D. Reddig | 45 |
| Elmer J. Kalat | 10 |

At all times since its formation in 1946, through the years involved, the Maxwell Company was engaged in the manufacture of boring heads and recessing tools, which are accessories or toolholders for other machine tools.

On January 1, 1952, the partners executed instruments called trust agreements and a partnership agreement. The trust agreement Henry and Thelma Reddig executed provided in the first paragraph that "Grantors hereby irrevocably assigns [sic] to Trustee, in trust, an undivided Twenty Per Cent (20%) interest in certain assets, subject to certain liabilities as more fully described in * * * Schedule 'A' and made a part hereof." The said schedule listed the assets and liabilities of the Maxwell Company and the paragraph of the trust instrument went on to "direct" that the property assigned, to be termed the "Trust Estate," was to "be contributed to a partnership organized this day in accordance with the copy of a Partnership Agreement attached hereto." The further direction to the trustee was that he "continue his interest in that partnership until the termination of this trust or of said interest in the partnership in accordance with the terms of said Partnership Agreement."

The trust instrument names E. D. McCurdy, an attorney, and a law partner of the attorney who represents petitioners in these cases, as trustee (to act without bond) and the Reddigs' two minor children as equal beneficiaries. It provides in paragraph 4, for discretion in the trustee to accumulate income or to pay to beneficiaries current income or corpus until the beneficiaries reach 25 years of age, when they are each to receive his or her portion of corpus and accumulated income, but this paragraph further authorizes the trustee "in his sole and absolute discretion, if he may deem it advisable, to make such payments of income or corpus directly to any beneficiary or to any person with whom such beneficiary shall reside."

Paragraph 5 of the trust instrument provides as follows:

5. So long as the assets of the trust are at any time invested in any business, regardless of the form in which such business is carried on, whether proprietorship, partnership or corporation, and it is decided from time to time by the managers, partners or proprietors of any such business whether or not such managers, partners or proprietors include or consist of the Trustee of this trust, that it is in the best interests of such business to retain earnings for working capital needs or for legitimate reserves, or to provide funds for expansion or any other legitimate purposes connected with the protection or expansion of such business, then, and in any such event, the earnings shall not be required to be distributed to the trust until such time as it may be decided by the managers, partners, or proprietors of the business that the retention of any such earnings is no longer necessary or helpful to the business. The Trustee is authorized to accept the decision as to any retention of earnings in any business as being within the absolute discretion of the managers, partners, or proprietors thereof, and it shall be binding on all parties in interest hereunder, and

the Trustee shall abide by any such decision so long as he may deem it in the best interests of the trust as a proprietor of such business to do so. In event any conflict arises between the duties imposed by law upon Trustee in his capacity as Trustee hereunder, and the duties imposed by law or otherwise upon Trustee in his capacity as a manager, proprietor or partner of any business in which the trust may own an interest, the latter shall control. The Trustee shall not be held accountable in any way for decisions or actions taken in good faith in the furtherance of Grantors' intentions as expressed in or implied by this instrument, or in any business in which the trust may hold an interest, and in which either of Grantors may be a manager, or in which Grantors may have a controlling interest, nor shall the Trustee be held responsible to any Beneficiary or to any person or persons now or hereafter beneficially interested in the trust, for any loss in income or to the corpus thereof, unless the same shall occur through his gross neglect or willful malfeasance. For the purposes of the Trustee's exercise of his discretionary power of distributing trust income hereunder as provided above, the earnings of any business which have been retained pursuant to the terms of this paragraph shall not be deemed to be income of the trust until such time as the earnings of the business are released to the Trustee.

Paragraph 6 of the trust instrument provides that the portion of a deceased beneficiary shall go to his issue and, if there is no issue, then to the surviving beneficiary, and, if both die before age 25 without issue, the trust terminates and the trust estate is to be paid and distributed to grantors or their heirs.

The following paragraphs of the trust instrument grant rights of grantors to add property to the trust estate; rights to the trustee to invest and reinvest trust property; rights to the trustee to deal with real estate and securities to the best interest of the trust; rights to the trustee to pay expenses and generally exercise rights and perform duties customarily exercised and performed by a trustee. Paragraph 9 of the trust instrument contains this sentence:

Grantors intend to, and do hereby, relinquish absolutely and forever all possession or enjoyment of or right to the income from the trust property, whether directly or indirectly or constructively, and if [sic] every interest, present or future, in the trust property.

The last paragraph of the trust instrument provides the trustee shall give an annual written report of the trust income and expenditures to grantors.

The trust instrument in the Kalat case has the same trustee and is identical with the Reddig trust with the exception that Elmer Kalat is the grantor and his three children, the beneficiaries, in the proportions of 2, 2, and 1 per cent of the same assets. Another difference is that the trust assets and accumulated income are distributable to beneficiaries when they reach age 21 years and in the event they all die before reaching that age, the trust estate is to be distributed to Elmer J. Kalat and Ruth Kalat or to the survivor. Ruth Kalat was not a grantor or party to the trust agreement.

The partnership agreement, which was executed the same day as the two trust agreements and incorporated by reference in said trust agreements, provides for the formation of a partnership under the firm name of "THE MAXWELL COMPANY" in which Henry S. Reddig, Thelma D. Reddig, Elmer J. Kalat, E. D. McCurdy, as trustee for the Reddig children, and E. D. McCurdy, as trustee for the Kalat children, will all be partners. The Reddigs are each to have 25 per cent interest and their two children are each to have 20 per cent interest. Kalat is to have 5 per cent interest and his three children, 2, 2, and 1 per cent interest. The partnership is to carry on the business of manufacture and sale of tools in Bedford, Ohio, and commence business January 1, 1952, and continue until January 1, 1953, and thereafter from year to year until terminated by action of 75 per cent capital interest or by death of certain partners. The salaried partners are to be Reddig and Kalat and Reddig is named as the "Managing Partner in the conduct of the ordinary business of the partnership." Special provisions are made in the event of the termination of the interest owned by either trust. Such termination "shall not terminate or dissolve the partnership" but the partnership will go on, with the Reddigs acquiring their children's interest and Kalat his children's interest. While any partner is given the right to withdraw, liquidation will not follow without consent of 50 per cent of the capital ownership and if liquidation does not follow the withdrawing partner will "be deemed to have agreed to sell his interest in the partnership upon the basis of the value of his capital account * * * determined according to the partnership books * * * without allowance for good will, trade names, patents or other intangible assets." Provision is made for the mandatory withdrawal of the trustee of the Kalat children in the event Kalat should die but not for the trustee of the Reddig children in the event of the death of either Henry or Thelma Reddig. In the event any of the children die, provision is made for the Reddigs to purchase their deceased child's interest and Kalat to purchase his deceased child's interest—on the same basis set forth for a withdrawal.

The Maxwell Company, during the years 1952 and 1953, was a partnership in which capital was a material income-producing factor. It kept its books and records on a calendar year basis. It reported earnings from its operations in 1952 in the amount of $82,458.90 and in 1953 it reported earnings of $82,151.66 which, as adjusted by the revenue agent, amounted to $82,828.96. The total amount of capital expenditures of the Maxwell Company was $2,000 during the years 1952 and 1953.

The capital accounts of the various alleged partners at the commencement of the partnership on January 1, 1952, and on subsequent dates, were as follows:

|  | Jan. 1, 1952 | Dec. 31, 1952 | Dec. 31, 1953 |
|---|---|---|---|
| Henry S. Reddig | $6,241.56 | [1] $19,581.35 | [1] $26,677.58 |
| Thelma D. Reddig | 6,241.56 | 22,956.31 | 0 |
| C. Richard Reddig | 5,004.49 | 18,376.28 | 28,306.61 |
| Dyeann Reddig | 5,004.49 | 18,376.28 | 28,306.61 |
| Elmer J. Kalat | 2,856.61 | 4,687.75 | 3,400.56 |
| Keith Kalat | 1,142.64 | 2,479.82 | 3,822.85 |
| Kenneth Kalat | 1,142.64 | 2,479.82 | 3,822.85 |
| Judith Kalat | 571.33 | 1,239.92 | 1,911.44 |

[1] Overdrawn.

The following payments of cash are shown by the partnership books to have been made by the Maxwell Company to Henry S. Reddig and Thelma D. Reddig in 1952:

| | |
|---|---|
| During 1952—$100 per week | $5,200.00 |
| Jan. 14, 1952—for internal revenue collector | 7,200.00 |
| Jan. 28, 1952—Hospitalization | 14.40 |
| Apr. 30, 1952—Hospitalization | 14.40 |
| June 30, 1952—Cash | 1,500.00 |
| July 30, 1952—Hospitalization | 14.40 |
| July 30, 1952—Withdrawal (transferred to H. S. Reddig and T. D. Reddig account) | 19,500.00 |
| Oct. 29, 1952—Withdrawal (transferred to H. S. Reddig and T. D. Reddig account) | 15,000.00 |
| Nov. 30, 1952—Cash | 1,794.46 |
| | 50,237.66 |

The following payments of cash are shown by the partnership books to have been made by the Maxwell Company to the Reddigs in 1953:

| | |
|---|---|
| During 1953—$100 per week | $5,200.00 |
| Jan. 15, 1953—for internal revenue collector (½ H. S. Reddig $11,000) | 5,500.00 |
| Mar. 15, 1953, for internal revenue collector | 644.36 |
| May 7, 1953—Cash | 950.00 |
| June 7, 1953—Cash | 510.00 |
| July 8, 1953—Cash | 19,035.59 |
| Sept. 30, 1953—Cash | 10,700.00 |
| Oct. 15, 1953—To Torcon Co. on H. S. Reddig account | 10,000.00 |
| Oct. 15, 1953—To McKinnon Iron Works on H. S. Reddig account | 944.30 |
| Oct. 31, 1953—Cash | 1,632.75 |
| Nov. 4, 1953—Cash | 5,000.00 |
| Dec. 1953—Invoice paid for H. S. Reddig | 277.59 |
| Dec. 31, 1953—Cash | 5,000.00 |
| | 65,394.50 |

Repayments in the following amounts have been credited to the capital accounts of Henry and Thelma Reddig:

| | |
|---|---|
| Apr. 14, 1955 | $15,300 |
| July 1, 1955 | 8,000 |
| Aug. 10, 1955 | 5,000 |
| Aug. 31, 1955 | 20,000 |

1388

In 1953 cash distributions were paid to the director of internal revenue in payment of tax liabilities of C. Richard Reddig in the amount of $3,500 and, of Dyeann Reddig, in the amount of $3,500. The books of the Maxwell Company show a charge to the drawing account of each beneficiary in such amounts. These were the only distributions made by the Maxwell Company to the trust for the benefit of the Reddig children during the years 1952 and 1953. No distributions were made by the Maxwell Company to the trust for the benefit of the Kalat children during the years 1952 and 1953.

In May 1951 Henry Reddig, together with his brother, acquired all of the outstanding stock of the McKinnon Iron Works except for a parcel of stock which was acquired by them later. This was primarily a foundry and general jobbing machine shop. Henry held 195 and a fraction shares of the McKinnon stock in his name and an equal amount was held by his wife, Thelma. In August of the same year Henry, together with his brother, acquired 67 per cent of the outstanding stock of the Torcon Corporation. This corporation was engaged in the developing, engineering, and sales of a torque converter transmission. Henry held 963 shares of this stock in his name, and his wife, Thelma, held 962 shares in her name. During the years 1952 and 1953 McKinnon Iron Works was operated as a subsidiary of Torcon. In August 1954 the Torcon Corporation was sold, with Henry and Thelma retaining their stock interest in McKinnon Iron Works. There was no relationship between the type of business done by McKinnon Iron Works and the Torcon Corporation and that done by the Maxwell Company.

Sometime in the middle of 1954, prior to August of that year, Henry and his wife each executed a promissory note to the order of McCurdy, as trustee, in the amount of $26,677.58, with each of the parties pledging as collateral security their shares of stock in the Torcon Corporation. In July 1955 these notes were returned to Henry and to his wife marked void and canceled.

On July 20, 1955, Henry S. Reddig executed his collateral promissory note to McCurdy, trustee for the two Reddig children, in the amount of $51,014.83, bearing interest at 4 per cent per annum from January 1, 1955, representing withdrawals charged to the capital accounts of Henry and Thelma. Henry also pledged on that date as collateral security for the payment of said note, 195 and 192/200 shares of the common stock of McKinnon Iron Works Company. On the same date Thelma executed a guaranty to McCurdy, as trustee, guaranteeing the payment by Henry of the aforesaid note of $51,014.83 and pledged as security for the performance of such guaranty 195 and 150/200 shares of capital stock of McKinnon Iron Works Company.

The Maxwell Company continued as a partnership until March 1956, at which time all of the assets of the partnership were exchanged

for the stock of Maxwell Industries, Inc., an Ohio corporation. The stock of the corporation was issued in the same proportion as the capital account of each of the partners, the trustee receiving a percentage of the common stock for each of the beneficiaries of the trusts. In addition to the stock, the trustee received 4 per cent, 15-year debenture notes of the corporation, representing each beneficiary's share of the earnings and profits of the partnership since its inception, less withdrawals.

The fiduciary partner was not the real owner of the partnership interests in the Maxwell Company.

### OPINION.

The deficiencies determined by respondent in the cases result from his not recognizing for income tax purposes E. D. McCurdy, as trustee for the Reddig children and as trustee for the Kalat children, as a partner in the Maxwell Company.

Section 340 (a), Revenue Act of 1951, amended section 3797 (a) (2) (I. R. C. 1939) by adding thereto the following sentence:

A person shall be recognized as a partner for income tax purposes if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.

Section 340 (b), Revenue Act of 1951, amended supplement F of chapter 1 by adding at the end thereof a new section, in part, as follows:

SEC. 191.  FAMILY PARTNERSHIPS.

In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income * * *

Section 340 (c), Revenue Act of 1951, made the amendments applicable to taxable years beginning after December 31, 1950.

We have found that capital was a material income-producing factor in this partnership. The business of the partnership was that of manufacturing products for sale and it required substantial inventories and investment in plant, machinery, and equipment, which ordinarily shows the need for capital as opposed to a business dealing in personal services performed by the partners. Regs. 118, sec. 39.191–1 (a) (4).

The Ways and Means Committee Report[1] at the time of the enact-

[1] H. Rept. No. 586, 82d Cong., 1st Sess., 1951–2 C. B. 357, 380–381:

Section 312 of your committee's bill is intended to harmonize the rules governing interests in the so-called family partnership with those generally applicable to other forms of property or business. Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income. If an individual makes a bona fide gift of real estate, or of a share of corporate stock, the rent or dividend income is taxable to the donee. Your committee's amendment makes it clear that, however

ment of section 340, Revenue Act of 1951, which report we have set forth in the footnote, relates the confusion that existed in the decisions of the courts with respect to the recognition of family partnership interests. The report mentions *Commissioner* v. *Culbertson*, 337 U. S. 733, and *Commissioner* v. *Tower*, 327 U. S. 280, and calls attention to decisions of this Court which refer to "intention," "business purpose," "reality," and "control" when deciding whether a valid partnership exists between members of a family. The report makes clear the congressional intent is to settle this confusion and "harmonize the rules governing interests in the so-called family partnership * * * to other forms of property or business." It is stated in the report that the question which is left for the Commissioner and the courts to decide is "whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him." The gift or sale of the partnership interest is not to be a "mere sham." It must be a bona fide gift or transfer and because it is a family transaction there must be close scrutiny. It is not to be

the owner of a partnership interest may have acquired such interest, the income is taxable to the owner, if he is the real owner. If the ownership is real, it does not matter what motivated the transfer to him or whether the business benefited from the entrance of the new partner.

Although there is no basis under existing statutes for any different treatment of partnership interests, some decisions in this field have ignored the principle that income from property is to be taxed to the owner of the property. Many court decisions since the decision of the Supreme Court in *Commissioner* v. *Culbertson*, (337 U. S. 733) have held invalid for tax purposes family partnerships which arose by virtue of a gift of a partnership interest from one member of a family to another, where the donee performed no vital services for the partnership. Some of these cases apparently proceed upon the theory that a partnership cannot be valid for tax purposes unless the intrafamily gift of capital is motivated by a desire to benefit the partnership business. Others seem to assume that a gift of a partnership interest is not complete because the donor contemplates the continued participation in the business of the donated capital. However, the frequency with which the Tax Court, since the Culbertson decision, has held invalid family partnerships based upon donations of capital, would seem to indicate that, although the opinions often refer to "intention," "business purpose," "reality," and "control," they have in practical effect reached results which suggest that an intrafamily gift of a partnership interest, where the donee performs no substantial services, will not usually be the basis of a valid partnership for tax purposes. We are informed that the settlement of many cases in the field is being held up by the reliance of the field offices of the Bureau of Internal Revenue upon some such theory. Whether or not the opinion of the Supreme Court in *Commissioner* v. *Tower* (327 U. S. 280) and the opinion of the Supreme Court in *Commissioner* v. *Culberston* (337 U. S. 733), which attempted to explain the Tower decision, afford any justification for the confusion is not material—the confusion exists.

The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of *Helvering* v. *Clifford* (309 U. S. 351 [*sic*]). The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny. All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale.

recognized as a family partnership if, after the gift or sale, the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away as was held by the Supreme Court in an analogous trust situation involved in the case of *Helvering* v. *Clifford*, 309 U. S. 331. In determining the bona fides of the gift or sale, all of the facts and circumstances at the time of the transfer and during the periods before and after it may be considered.

Reading and applying the statute in the light of the legislative history outlined above, the question in this case is whether the fiduciary partner was the real owner of the partnership interests which petitioners argue they gave to him.

The Commissioner has adopted regulations setting forth basic tests to be applied and factors to be considered when the inquiry is whether an alleged partner who is the donee of a capital interest in a partnership is the real owner of such interest. Regs. 118, sec. 39.191–1 (b). In general, these regulations list many factors to be considered such as direct and indirect retention of control and management powers by donors and limitation of the right of donee to sell or liquidate his interest and retention by donor of control over distribution and the conduct of the partnership business—all factors to be considered when determining the reality of the donee's ownership of a capital interest in the partnership.

Subsection (b) (7)[2] of the above cited regulations provides that a trustee may be recognized as a partner and, if he is unrelated to and independent of the grantor, he will be recognized unless the grantor retained controls inconsistent with the donee's ownership. But if the

[2] Regs. 118.

SEC. 39.191–1 (b) (7). *Trustees as partners.* A trustee may be recognized as a partner for income tax purposes under the principles relating to family partnerships generally as applied to the particular facts of the trust-partnership arrangement. A trustee who is unrelated to and independent of the grantor, and who participates as a partner and receives distribution of the income distributable to the trust, will ordinarily be recognized as the legal owner of the partnership interest which he holds in trust unless the grantor has retained controls inconsistent with such ownership. However, if the grantor is the trustee, or if the trustee is amenable to the will of the grantor, the provisions of the trust instrument (particularly as to whether the trustee is subject to the responsibilities of a fiduciary), the provisions of the partnership agreement, and the conduct of the parties must all be taken into account in determining whether the trustee in a fiduciary capacity has become the real owner of the partnership interest. Where the grantor (or person amenable to his will) is the trustee, the trust may be recognized as a partner only if the grantor (or such other person) in his participation in the affairs of the partnership actively represents and protects the interests of the beneficiaries in accordance with the obligations of a fiduciary and does not subordinate such interests to the interests of the grantor. Furthermore, if the grantor (or person amenable to his will) is the trustee, the following factors will be given particular consideration:

(a) Whether the trust is recognized as a partner in business dealings with customers and creditors, and

(b) Whether, if any amount of the partnership income is not properly retained for the reasonable needs of the business, the trust's share of such amount is distributed to the trust annually and paid to the beneficiaries or reinvested with regard solely to the interests of the beneficiaries.

trustee is amenable to the will of the grantor, special scrutiny of the trust instrument will be made and the conduct of the parties considered to see if the trustee is to act in the best interests of the beneficiaries or in the interest of the grantors.

When we consider all of the factors in this case, as disclosed by the circumstances at the time the trust and partnership agreements were executed, the terms of said instruments, and the conduct of the parties thereafter, we are convinced respondent was correct in holding the trustee for the Reddig and Kalat children was not the real owner of partnership interests for income tax purposes in the Maxwell Company within the meaning of the statute. The donors of the capital interests to their children in trust retained too many controls over the subject matter of the gifts to warrant a holding that the trustee in each instance was the real owner of the capital interests conveyed within the meaning of the statute.

In the trust agreements, we find the trustee selected is the law partner of petitioners' attorney representing them in this case. The undivided interest in the property is given in trust to the children but the same sentence in the two instruments directs the trustee to contribute the interest to the partnership. The trust agreements use language of absolute conveyance as if the donors were parting with all of their interests in the donated partnership interests but actually the instruments are loaded with clauses and provisos designed to curtail the ownership rights of the donees and make sure important controls will be retained by the donors.

The trustee is given the right to pay income or corpus to or for the benefit of the beneficiaries but also "in his sole and absolute discretion" to make such payments to the persons "with whom such beneficiary shall reside." In 1952 the Reddig children were 12 and 15 years old and the three Kalat children were 2, 8, and 10 years old. Presumably the children beneficiaries resided with their parents, the grantors. The clause would seem to authorize the trustee to pay corpus and income to the grantors.

Clause 5 of the trust instruments, which we have set forth in our Findings of Fact, is replete with confusing language, but the general design seems to be to have the trustee act, especially with regard to the distribution of partnership earnings, in the interest of the partnership, as the donor partners shall determine even though such action would conflict with the duty of the trustee to act in the best interest of the beneficiaries. The trustee is not to be held accountable so long as he acts in good faith "in the furtherance of Grantors' intentions as expressed in or implied by this instrument." It is perfectly apparent from a reading of the entire trust agreement the donees received much less than full and complete ownership and the donors emerged from

the gift transaction with strings over the donated property that they could pull for their own advantage.

The retention of control on the part of the donors is increased when we turn to the next instrument, the partnership agreement. By the trust agreement the undivided interest in the property that made up the trust estate in each trust had to be contributed to the Maxwell Company partnership. The partnership was completely dominated and controlled by the "individual parties" or the grantors of the trust agreements. Henry S. Reddig had more control than the others but the point is the trustee partner had almost no voice in the conduct of the business.

While any partner was given the right to withdraw, liquidation and dissolution would not result unless those owning more than one-half of the capital interest elected to so do. Those owning more than one-half of the capital interest were the individual partners or grantors of the trusts. It is clear that if the trustee partner chose to withdraw he could not sell his interest at fair market value. Cf. *Hargrove Bellamy*, 14 T. C. 867. If there were no election to dissolve or liqui-date, the withdrawing partner was deemed to have elected to sell his interest at book value without allowance for goodwill, trade names, patents, or other intangible assets. Provision is made in the partnership agreement for Elmer Kalat to purchase the capital interest of any of his children who die and for the Reddigs to purchase the capital interest of any of their children who die but if Kalat should die, the partnership is to terminate and the trustee for the Kalat children is to withdraw and Kalat's estate and the trustee for his children are to be paid *from the partnership*, for the value of the Kalat interest, and the value of the trust interest for the Kalat children, and Henry and Thelma Reddig "shall be deemed to own an equal portion of such interests so acquired by the partnership." In the latter contingency it is to be noted partnership earnings in which the trustee of the Reddig children would have a 40 per cent interest, would be devoted to purchasing a capital interest for other partners.

We do not feel that further detailed analysis of the trust and partnership agreements is necessary to show that the transactions were each nothing more than a sham or pretense of donating capital interests in the Maxwell Company. The ownership of the donees was not the real ownership contemplated by the statute and the Commissioner's regulations. They were not bona fide gifts of capital interests uncontrolled by the donors. While the Reddigs were left with a little more control under the partnership agreement than Kalat, the latter was given the same control in the trust instrument and that, together with his rights as an individual partner, would be sufficient to foreclose recognition of the trustee for his children as a partner.

It can be said here, as was said of the trust in *Helvering* v. *Clifford*, *supra:*

> So far as his [grantor's] dominion and control were concerned it seems clear that the trust did not effect any substantial change. In substance his control over the corpus was in all essential respects the same after the trust was created, as before. * * *

The trustee was a member of the law firm employed by petitioners. In many of the clauses in the trust instrument he appears to be given the type of dominion and control usually given and exercised by a trustee. But other provisions make certain that no substantial change is to result from the entry of the fiduciary partner into the partnership. Admittedly the intimacy of the family relationship will no longer be sufficient under the present statute to establish retention of control by the donor, who is head of the family group. But when there is added to that relationship a trustee who must be said to be under the dominion of the grantor, and the trust instruments tell the trustee he is to carry out grantors' intent, and it fairly appears from the language of the trust instruments that this means he is to administer his trusts as the grantor partners shall dictate, then the grantors are retaining, in terms of partnership interest, the substantial equivalent of what they previously had. And when we add to these factors the conduct of the parties after the transaction, it is clear the transfers of partnership interests in trust were not meant to have, and were not treated as having, any material significance.

During the years 1952 and 1953, the first 2 years of the new partnership in which the trustee was purportedly a partner, there were no distributions of earnings, or any other distributions, to the trusts. In those same 2 years the earnings of the partnership exceeded $80,000 in each of the years. There were withdrawals from the partnership earnings in 1953 to pay the income taxes of the two Reddig children though no withdrawals were made for the Kalat children for such purposes. During these same years Henry Reddig withdrew a total amount of $50,237.66 in 1952 and $65,394.50 in 1953. It appears as a consequence of such withdrawals that his capital account was overdrawn to the extent of $19,581.35 at the end of 1952 and by the end of 1953 his account was overdrawn by the amount of $26,677.58. In addition, by the end of 1953 the capital account of Henry's wife had' been reduced to zero. A part of these withdrawals was used to finance investments by Henry in two other corporations engaged in operations which had no bearing or connection with the partnership.

We can only gather from this evidence that Henry had absolute control, and exercised such control, evidently with the consent of Kalat, over the earnings of the partnership and, furthermore, that the trustee had no voice whatever in the use of such partnership earnings. It also

appears from the record that the trustee did not participate at all in the affairs of the partnership. He had no direct contact with either customers or suppliers of the partnership. No checks on the partnership were ever drawn by him, and it is his testimony that: "Whether I was authorized or not I don't know, but I never drew any to my recollection." Under the partnership agreement, the trusts were not to participate in any of the partnership losses beyond the amounts in the capital accounts attributed to the trusts. Moreover, the trustee was "exonerated as a partner from obligations of the partnership."

Lastly, we cannot ignore the timing of the arrangements made in January 1952 to set up the trusts and to have the trustee as a new partner in the Maxwell Company. Reddig testified that it was his impression that in 1951 Congress passed a law the effect of which was "that beginning with 1952 the family partnerships would be honored." The new partnership agreement was drawn up in January 1952. The motive to save taxes, of course, is not incompatible with the intention to create a bona fide partnership but where it appears, as here, that the parties merely executed instruments of trust and partnership which contain the language of formal requirements of a new partnership but also language retaining control in donors and then proceeded, in effect, to ignore any new relationship, then we cannot escape the implication that the new arrangement was a sham, and the ownership of the donees was not the real ownership demanded by the statute.

We hold respondent was correct in not recognizing the trustee for the Reddig and Kalat children as a partner in the Maxwell Company.

*Decisions will be entered for the respondent.*