**SMITH et al. v. WESTOVER et al.**

**No. 15161.**

United States District Court,
S. D. California, Central Division.
June 24, 1954.

Latham & Watkins, Henry C. Diehl, Los Angeles, Cal., for plaintiffs.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Bruce I. Hochman, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the defendants that the plaintiffs take nothing by the Complaint. Costs to the defendants. Findings of Fact and Judgment to be prepared by counsel for the defendants according to Local Rule 7.

Comment.

The plaintiffs Jack Smith and Rose Mae Smith, husband and wife, seek to recover income taxes paid for the years

1943 and 1946, and interest. The claim arises out of a family partnership in the wholesale shoe business known as the Boston Shoe Company, successfully established by the plaintiff Jack Smith before his marriage to the plaintiff Rose Mae Smith. After marriage the spouses considered that the business was community property to which the husband's earning capacity had contributed. On December 31, 1942, the husband bought the wife's interest for the sum of $102,-933.89, the purchase price being represented by four promissory notes in different amounts, with different due dates, one year apart, given by him to his wife on the same date.

On September 29, 1943, two trusts were created for the benefit of the children of Jack and Rose Mae Smith, one designated as the "Howard Samuel Smith Trust", in favor of the son then aged eleven; the other named the "Barbara Ann Smith Trust", in favor of the daughter then aged three. The daughter is still under age. The son is now twenty-two, and, after securing a degree in chemistry at Stanford University, entered Harvard University as a postgraduate student, and now has been accepted at the Harvard Law School. These seemingly minor facts are, in cases of this character, of great importance because, despite the fact that the son may, during his vacations, have worked in the shoe business, he is not *preparing for the business,* and it is not likely that a man with such educational background would engage in such business with his father after completing his education.

But back to the Trusts. In creating them, there were assigned by the father to the "Howard Samuel Smith Trust" three United States certificates of indebtedness totaling the principal sum of $30,000. To the "Barbara Ann Smith Trust" there was assigned one of the $30,000 notes executed by Smith to his wife.

The Trusts are irrevocable. They are subject to the absolute power of the parents as trustees, the beneficiaries having only "the right to enforce" performance. The distribution of the income is controlled by the trustees. So is the investment of the principal. The children have a graduated right to the distribution of the corpus of the trust, one-fourth upon reaching the age of 25, one-fourth at 30, and the balance at 35. Almost simultaneously with the creation of the two trusts a partnership in the shoe business was entered into effective September 20, 1943, by the members of the family. Jack Smith was assigned 40 per cent, Rose Mae Smith 30 per cent, and the Trusts 15 per cent each in the Boston Shoe Company. The wife acquired her interest by surrendering a $60,000 note executed to her by Jack Smith. Both trusts exchanged their assets for the respective interests in the new partnership. Under the terms of the partnership, which was modified at one time by including an employee, then returned to the original state, control continued to be exercised by Jack Smith. Salaries of $25,000 per year for the husband and $2,400 for the wife were provided for (art. V). The net proceeds of the business were to be distributed in accordance with the percentages established by the Trusts. The main partners retained the power to determine the amount of the salaries to be paid to themselves. The salaries were to be paid before any "distributive net profits" and were to be considered a part of the costs of "doing business". No business transaction could be conducted by the partnership without the approval of the husband (art. VII). Nor could it enter into any contracts or incur any liabilities during the life of the husband, while he was a partner, without his consent. The life of the partnership was set at three years, and thereafter for successive minimum terms of two years. And the husband was given the right to purchase the partnership at book value, in which event no good will could be considered as a part of the same (art. X, especially subdivision e). No amendment of the partnership could be made without the consent of the husband. The parents, as the trustees for the children, repre-

sented them in the partnership, so that the children had no direct or *independent* voice in the partnership.

The criteria by which the validity or invalidity of partnerships of this character are determined have been set forth by the Supreme Court in Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, 742, 69 S.Ct. 1210, 93 L.Ed. 1659. They have been applied by me on repeated occasions. See, Toor v. Westover, D.C.Cal.1950, 94 F.Supp. 860; Schlobohm v. United States, D.C.Cal. 1952, 105 F.Supp. 593. Among late cases from our Court of Appeals are Parker v. Westover, 9 Cir., 1950, 186 F.2d 49; Harkness v. Commissioner of Internal Revenue, 9 Cir., 1952, 193 F.2d 655. And see, Schallerer v. Commissioner of Internal Revenue, 7 Cir., 1953, 203 F.2d 100.

▮▮ Since the Culbertson case, the fact that the capital which created the trust came from the parents is not determinative of the matter. Courts take the view that the creation of trusts by parents out of concern for the future welfare of the children is a natural and laudable impulse. As said in Miller v. Commissioner of Internal Revenue, 6 Cir., 1953, 203 F.2d 350, 354:

> "Human experience teaches that the concern of parents over the financial security of their children is often greater than concern for their own security and enjoyment of the fruits of their labors."

However, the other elements which are spelled out in the Culbertson and subsequent cases, such as (1) absence of change of control in the business, (2) the power to terminate the partnership interest upon the terms of the managing partner, (3) the absence of judicial control through a court-controlled trustee or through a guardianship of the estate of the minors, (4) the lack of any expectation that the children would ever go into the business (a *contrary expectation* was the primary consideration in the determination of the case of Miller v. Commissioner, supra, upon which so much reliance is placed by plaintiffs),

(5) the large salary voted himself by the father,—$25,000, and (6) the unlimited control of both the trusts and partnership,—all these clearly indicate that the partnership had no existence as a taxable entity. In reality, the husband continued to dominate and manage the business as he had before, subject only to the rights of the wife under the community property laws of California. Cal. Civil Code, Secs. 172–172a. That the parents generously deposited the profits of the partnership to the trusts and did not draw from them even their legitimate expenditures for the education of the children so that, in 1948, the value of each trust was around $115,000, is praiseworthy. But the fact remains that the earnings for the years in question were the earnings of "the husband and wife" partnership to which neither the capital, skill or even the future expectations of the children added aught. The Commissioner was, therefore, right in disregarding the partnership of the children for tax purposes during the years 1943 to 1946.

Hence the ruling above made.