Ray R. Offord, Jr., and Frances N. Offord v. Commissioner.
Offord v. Commissioner
Docket No. 86002.
United States Tax Court
T.C. Memo 1961-159; 1961 Tax Ct. Memo LEXIS 191; 20 T.C.M. (CCH) 797; T.C.M. (RIA) 61159; May 31, 1961
S. A. Sorenson, Esq., Jacksonville, Ore., for the petitioners. Leo O'Brien, Esq., for the respondent. SCOTT
Memorandum Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1957 in the amount of $4,558.42. The only issue for decision is whether petitioners as trustees of certain trusts created by them for the benefit of their minor children are to be recognized as partners in Ray Offord Logging. Respondent determined that petitioners had not divested themselves of dominion and control of any interest in the business and were the only partners *192 to be recognized for income tax purposes. All of the facts have been stipulated and are found accordingly. Petitioners, Ray R. Offord, Jr., and Frances N. Offord (sometimes hereinafter referred to as Ray and Frances), are husband and wife with residence at Jacksonville, Oregon, P.O. Box 26. Petitioners' joint income tax return for the taxable year 1957 was filed with the district director of internal revenue for the district of Oregon. Ray R. Offord, Jr., was engaged in the business of contract logging for a number of years prior to 1957. During the years prior to 1952 he was associated with an individual named May in the contract logging business. In April 1952 Ray formed a partnership with another individual named Manley to conduct a contract logging business under the firm name of Manley and Offord Logging Co. This partnership was dissolved on or about October 8, 1954. On or about October 1, 1954, Ray began a contract logging business under the name of Ray Offord Logging. The initial equipment used in Ray Offord Logging was purchased by Ray from Manley and Offord Logging Co.
On May 9, 1957, petitioners both executed similar trust agreements, each purportedly creating individual *193 trusts for their three minor children, Lynn M. Offord, born December 26, 1942; Gene R. Offord, born March 12, 1944; and Steven R. Offord, born September 18, 1947. Frances was made trustee by the instrument executed by Ray, and Ray was made trustee by the instrument executed by Frances. Both trust instruments provided that "The Grantor hereby transfers and delivers to the trustee the property listed in Schedule A, hereto annexed, the receipt of which is hereby acknowledged by the Trustee, upon the express terms and conditions and with the powers and limitations hereinafter set forth." The trustees were directed to hold, manage, and invest the trust estates and empowered to "make payments for the benefit of Lynn, Gene, and Steven directly to them, or to the guardian of their person, or to any other persons deemed suitable by the Trustee or by direct payment of expenses incurred for their benefit" of so much of the principal and the current or accumulated income therefrom, at such time or times and in such amounts and manner as the trustees shall determine. Income not distributed was to be accumulated. The trusts were to terminate when the children reached 21, and the entire trust estate *194 as it then existed was to be turned over to the beneficiaries. Should any of the children die before age 21, the then existent trust corpus for that child would be paid over to the child's estate. The trustees were given broad powers to invest, mortgage, pledge, exchange, lease, and sell the trust assets including the power, To engage in business with the property of the trusts as sole proprietor, or as a general or limited partner, with all the powers customarily exercised in any property as tenant in common or as tenant in partnership, including the right to purchase life insurance upon the life of any interested party for the purpose of implementing buy and sell agreements or otherwise provide funds for the benefit of the beneficiaries. Both trust instruments were made irrevocable. At the time the two trust instruments were executed on May 9, 1957, creating the six Offord trusts, and at all times subsequent thereto, no cash, property, property interest or other assets were distributed to, conveyed, transferred or contributed to the six Offord trusts by the grantors by deed, bill of sale, assignment, or other formal written instrument. Although the trust agreements refer to *195 the transfer and delivery to the trustees of certain property listed in Schedule A, annexed thereto, no such Schedule A was attached or annexed to such trust agreements or was in existence, and, in fact, no property or other assets were received by the trustee for each trust, and no assignment of any interest in Ray Offord Logging was conveyed to the trustees. Entries made on Ray Offord Logging's records reflect the following: 1-1-57
Ray Offord Investment
310
$38,033.27
Frances Offord, Investment
312
$14,262.47
Trust of Lynn M. Offord, Ray Offord, Trustee,
313-A
3,961.80
Frances-Grantor
Trust of Gene R. Offord, Ray Offord, Trustee,
313-B
3,961.80
Frances Offord, Grantor
Trust of Steven R. Offord, Ray Offord,
313-C
3,961.80
Trustee, Frances Offord, Grantor
Trust of Lynn M. Offord, Frances Offord,
313-D
3,961.80
Trustee, Ray Offord, Grantor
Trust of Gene R. Offord, Frances Offord,
313-E
3,961.80
Trustee, Ray Offord, Grantor
Trust of Steven R. Offord, Frances Offord,
313-F
3,961.80
Trustee, Ray Offord, Grantor
To set up Investment Accounts as per
Partnership
Agreement of 1-1-57
On May 22, 1957, a partnership agreement *196 was entered into between Ray, Frances, Ray as trustee for Lynn, Gene, and Steven, and Frances as trustee for Lynn, Gene, and Steven. The agreement recited the fact that the parties had been conducting a business engaged in the operation of logging, lumber buying and selling, and all related operations in connection therewith, under an oral agreement and provided for a partnership among the parties under the name of Ray Offord Logging to continue the business. The capital investment accounts of the partners were set at 28 percent for Ray, 27 percent for Frances, and 15 percent for each of the children, Lynn, Gene, and Steven. The net profits and losses of the partnership were to be apportioned among the partners in these same percentages. The management of the partnership was vested exclusively in Ray and Frances, or the survivor, and they had the right to fix salaries for any of the members of the partnership. It was further stated that: * * * Neither partner shall, except with the consent of the managing partners, assign, mortgage or sell his or her share in the partnership or in its capital assets or property or enter into any agreement as a result of which any person shall become *197 interested with him or her in the partnership, or do any act detrimental to the best interest of the partnership or which would make it impossible to carry on the ordinary business of the partnership. Each managing partner was given the right to retire from the partnership in which event the trustee partner would have the right either to purchase the retiring partner's interest for and on behalf of Lynn, Gene, and Steven or to terminate and liquidate the partnership business. Paragraph X(c) of the agreement provided that the purchase price paid to the retiring managing partner was to be determined in accordance with a predetermined value set for the retiring partner's interest by all the partners which would be adjusted by the partnership's auditor for any changes in the partner's investment account occurring after the aforesaid valuation. The agreement set the value of the interest of the respective partners as of its date as follows: Ray, $33,600; Frances, $32,400; Lynn, Gene, and Steven, $18,000 each. The agreement further provided as follows: Upon the death of a managing partner the surviving managing partner shall continue the partnership business without interruption and *198 under its existing trade name. The surviving trustee partner agrees to purchase the entire interest of the deceased in the partnership for and on behalf of Lynn M. Offord, Gene R. Offord and Steven R. Offord which the estate shall sell to said survivors. It is further agreed that the value of the interest of the deceased managing partner shall be determined for the purpose of sale and purchase as provided in Paragraph X(c), hereinabove. * * *
Each of the managing partners shall cause to be obtained, for and on behalf of Lynn M. Offord, Gene R. Offord and Steven R. Offord, insurance on each other's life, the purpose of which shall be to provide funds to implement the terms of this agreement. All policies shall be listed in Schedule A, attached hereto, and shall be subject to the terms of this agreement. During the lifetime of both managing partners and the continuance in force of this agreement, each managing partner agrees to cause to be paid for the benefit of said Lynn M. Offord, Gene R. Offord and Steven R. Offord, (beneficiaries of trust), the premiums on said policies as they become due, and to give proof of payment to the insured within twenty days after the due date of *199 each premium. * * * * * *
Each trustee partner agrees that all of the proceeds of the policies held in behalf of Lynn M. Offord, Gene R. Offord and Steven R. Offord for the purpose of this agreement, shall be applied in payment of the purchase price set forth above. * * *
Upon reaching the age of twenty-one (21), in the event the said Lynn M. Offord, Gene R. Offord and Steven R. Offord desire to withdraw from the partnership, the value of his or her partnership interest shall be declared to be an amount equal to the then cash or surrender value of the existing insurance policies owned by the said Lynn M. Offord, Gene R. Offord or Steven R. Offord upon the lives of the managing partners. If such option to withdraw and retire from the partnership is exercised, Lynn M. Offord, Gene R. Offord and Steven R. Offord shall assign his ownership of the outstanding life insurance policies on the life of Ray Offord, Jr., to Frances N. Offord, and the outstanding life insurance policies on the life of Frances N. Offord to Ray Offord, Jr., and each of the assignees therein shall forthwith have the right either to borrow upon said policies the then existing cash surrender value or furnish *200 a sum equal to such amount and upon payment of said sum to Lynn M. Offord, Gene R. Offord or Steven R. Offord, his right title and interest in such partnership shall cease and the same shall be vested in the managing partners absolutely. This provision shall be separate, self-operative and conclusive as to the termination of the interest of the said Lynn M. Offord, Gene R. Offord and Steven R. Offord under the terms and conditions herein provided. The partnership agreement also provided that all funds of the partnership of every nature should be deposited in such bank or banks as may be designated by the managing partners and that all withdrawals therefrom were to be made by check signed by either managing partner or such other party or agent as might be designated by the partnership. In Schedule A attached to the partnership agreement were listed the policy numbers of 10 insurance policies, 5 each on the lives of Ray and Frances. On June 6, 1957, an assumed business name certificate was filed by Ray Offord Logging in the office of the County Clerk of Jackson County showing that the real names of those conducting business under the name of Ray Offord Logging were Ray, Frances, *201 Lynn, Gene, and Steven Offord. Ray Offord Logging maintained its regular bank account with the United States National Bank at Medford, Oregon. The only persons authorized to sign checks on this account were petitioners. All funds received by Ray Offord Logging were deposited to the Ray Offord Logging account at the United States National Bank in Medford, Oregon. Ray Offord Logging deposited with the United States National Bank, Medford, Oregon a copy of the assumed business name certificate of Ray Offord Logging, signed copies of the two trust agreements, dated May 9, 1957, and a signed copy of the partnership agreement dated May 22, 1957. No partnership returns were filed by or for Ray Offord Logging for the taxable years 1954, 1955, and 1956. In 1957 a partnership return was filed reporting gross logging income of $387,871.24 and net operative income of $35,668.91. Salaries were shown as paid to Ray and Frances in the respective amounts of $14,400 and $2,400. The ordinary income of the partnership $19,352.73 ($35,668.91 operative income less $16,800 salaries paid plus $483.82 other income) and a $5,300 net capital gain (under section 1231 of the Internal Revenue Code *202 of 1954) upon the sale of one 1951 D-7 Caterpillar were apportioned among the partners as follows: Net Gain
Ordinary
Section
Income
1231
Ray Offord
$ 5,418.76
$1,484.00
Frances Offord
5,225.24
1,431.00
Trust of Lynn M. Offord,
Ray Offord, Trustee
1,451.45
397.50
Trust of Gene R. Offord,
Ray Offord, Trustee
1,451.45
397.50
Trust of Steven R. Offord,
Ray Offord, Trustee
$ 1,451.45
$ 397.50
Trust of Lynn M. Offord,
Frances Offord, Trustee
1,451.46
397.50
Trust of Gene R. Offord,
Frances Offord, Trustee
1,451.46
397.50
Trust of Steven R. Offord,
Frances Offord, Trustee
1,451.46
397.50
$19,352.73
$5,300.00
Ray Offord Logging made no distribution of earnings in cash or other assets to the six Offord trusts during the year 1957, or any subsequent year. The six Offord trusts did not keep or maintain any books or records during the year 1957 or any subsequent year. No trust bank accounts of any nature were maintained by the six Offord trusts. All moneys and profits earned by Ray Offord Logging during the year 1957 and subsequent years were deposited in the Ray Offord Logging bank account at the United States National Bank, *203 Medford, Oregon, and no proportionate part of the earnings was conveyed, delivered, or turned over to Ray R. Offord, Jr., or Frances N. Offord, as trustees, or to the six Offord trusts, or to any trust bank. Entries made on Ray Offord Logging's records reflect the following: 12-31-57
Profit and Loss
390
$41,452.73
Ray Offord, Investment
310
$21,302.76
Frances Offord, Investment
312
9,056.24
Trust of Lynn Offord, Ray Offord, Trustee,
313-A
1,848.96
Frances, Grantor
Trust of Gene Offord, Ray Offord, Trustee,
313-B
1,848.96
Frances, Grantor
Trust of Steven Offord, Ray Offord, Trustee,
313-C
1,848.96
Frances, Grantor
Trust of Lynn Offord, Frances Offord, Trustee,
313-D
1,848.95
Ray, Grantor
Trust of Gene Offord, Frances Offord, Trustee,
313-E
1,848.95
Ray, Grantor
Trust of Steven Offord, Frances Offord,
313-F
1,848.95
Trustee, Ray, Grantor
To close P & L to Investment Accounts
The six Offord trusts' withdrawals from Ray Offord Logging were recorded on the partnership's books and records. These withdrawals were charged to the trusts' capital accounts in the partnership. For the year 1958 the withdrawals were recorded *204 as follows: Date
Dr.
Cr.
Balance
4/30/58
Federal Taxes
$1,860.24
State Taxes
245.10
N.W. Swimming Pool Co.
3,500.00
$ 5,605.34
5/31/58
N.W.Swimming Pool Co.
1,500.00
Domestic Gas
20.00
7,125.34
6/30/58
Swimming Pool
$ 986.00
Domestic Gas
99.74
$ 8,211.08
8/31/58
Federal Est.
930.00
Phil Miles - car
860.00
N.W. Swimming Pool
113.65
James A. Elliot, Building
355.53
10,470.26
contractor
9/30/58
Medford Health Club
60.00
Domestic Gas
45.15
Gene Tuition school district
50.00
10,645.41
12/31/58
Fed. Est.
930.00
11,455.41
Phil Miles - Car check voided
$ 100.00
12/31/58
11,455.41
0
Fiduciary income tax returns were filed for 1957 for the six trusts each showing a total income of $1,848.95, composed of $1,451.45 ordinary partnership income and $397.50 capital gain, and a tax of $310.04. The total income tax liability of the trusts for 1957, $1,860.24, and for all subsequent years was paid by checks drawn on the partnership's bank account and charged to the trusts' withdrawal account. The 1957 and 1958 returns of income filed by the partnership showed the following reconciliations *205 of partners' capital accounts: Income not
Capital
included in
Capital ac-
contri-
Column 4
count at
bution
plus non-
beginning
during
taxable
Ordinary
1957
of year
year
income
income
Ray Offord, Jr.
$14,790.72
$15,884.00
$5,418.76
Frances N. Offord
14,262.47
3,831.00
5,225.24
Combined trusts
23,770.80
2,385.00
8,708.73
1958
Ray Offord, Jr.
$15,143.45
$15,682.67
$5,364.11
Frances N. Offord
14,602.61
3,636.85
5,172.54
Combined trusts
34,864.53
2,061.42
8,620.89
Chari-
Capital ac-
table
count at
contri-
With-
end of
1957
butions
drawals
year
Ray Offord, Jr.
$531.79
$20,418.06
$15,143.45
Frances N. Offord
221.53
8,494.57
14,602.61
Combined trusts
34,864.53
1958
Ray Offord, Jr.
$193.58
$16,672.98
$19,323.67
Frances N. Offord
54.92
4,723.54
18,633.54
Combined trusts
11,455.41
34,091.43
No loans of any nature were made by or to any of the six Offord trusts during the year 1957 or any subsequent year. On May 9, 1957, ten $10,000 life insurance policies were purchased, five on the life of Ray and five on the life of Frances. *206 In the five insurance policies on Ray's life, Frances was named owner and Frances, as trustee for Lynn, Gene, and Steven, was named beneficiary. In the five insurance policies on Frances' life, Ray, as trustee for Lynn, Gene, and Steven, was named owner and beneficiary. The insurance premiums on the 10 policies were paid by Ray Offord Logging and with respect to the premiums on the policies on Ray's life were charged to Frances' withdrawal account and with respect to the premiums on the policies on Frances' life were charged to Ray's withdrawal account. Petitioners' three children, Lynn, Gene, and Steven, contributed no capital or services to Ray Offord Logging during the year 1957 or any subsequent year. Ray and Frances contributed no capital or services to Ray Offord Logging in the capacity of trustees for the six Offord trusts during the years 1957 and the subsequent years. At the close of the calendar year 1957 and each subsequent year thereafter no declaration of the value of each partner's partnership interest was computed or declared as provided in the partnership agreement. State personal property tax returns were filed by the partnership for the years 1957 through 1960. *207 The 1957 return indicated only that Ray Offord, Jr., was doing business as Ray Offord Logging. The 1958, 1959, and 1960 returns indicated that Ray, Frances, Lynn, Gene, and Steven were doing business as Ray Offord Logging. The returns of income filed by the partnership for 1957 and 1958 showed, as of January 1, 1957, fixed assets composed of logging equipment with a cost of $123,335.20 and a reserve for depreciation of $69,236.75 and on December 31, 1957, fixed assets with a cost of $155,464.45 and a reserve for depreciation of $77,265.55. Petitioners contend that under the provisions of section 704(e) of the Internal Revenue Code of 1954, [1] the trusts created by them for their minor children should be recognized as partners in Ray Offord Logging since the trusts owned a capital interest in the partnership and capital is a material income-producing factor in its business. Respondent does not deny that capital is a material income-producing factor in the business of Ray Offord Logging but contends that the trusts created by petitioners lack substance and reality, are a sham and should not be recognized as partners for income tax purposes. *208 It is well settled that section 704(e) of the Internal Revenue Code of 1954 does not require that a trust be recognized as a partner for income tax purposes if it is a mere sham and if the grantors retain so many of the incidents of ownership in the capital interest purportedly transferred that in reality they continued to be the substantial owners of that interest. Henry S. Reddig, 30 T.C. 1382 (1958); Jack Smith, 32 T.C. 1261 (1959); Roy C. Acuff, 35 T.C. 162 (1960); and Harry L. Bialock, 35 T.C. - (Jan. 27, 1961). Considering all the facts in the instant case, including the circumstances at the time the trust and partnership agreements were executed, the terms of these instruments, and the conduct of the parties thereafter, we are convinced respondent was correct in holding that the trusts for the Offord children were not the real owners of partnership interests for income tax purposes in Ray Offord Logging. In the first place it does not appear that any assets were in fact conveyed to the trusts. Both trust indentures recited the fact that the assets therein being conveyed were enumerated on a Schedule A, attached. *209 However, in neither instrument was a Schedule A attached. Furthermore, the parties have stipulated that at no time subsequent to the execution of the trust indentures was any property received by the trustees for the trusts, nor was there an assignment of any interest in Ray Offord Logging conveyed to the trusts. There is no evidence showing that Frances Offord owned any interest in Ray Offord Logging in 1957 which she could have transferred in trust for her children. The parties stipulated that the Ray Offord Logging assets were purchased by Ray Offord in 1954 from another enterprise in which Ray was interested and thereafter the business was carried on by Ray. No partnership returns were filed by Ray Offord Logging in 1954, 1955, or 1956, thus creating the presumption that no partnership existed. There is no showing that any interest in the Ray Offord Logging assets was ever transferred to Frances prior to May 9, 1957, at which time Frances purportedly transferred an interest in the logging business in trust for her three children. The only facts evidencing a transfer of an interest in the logging business in trust by either petitioner were the entries made on the books of the business *210 creating capital accounts for the several trusts. However, book entries standing alone will not suffice to prove the existence of the facts recorded when other more persuasive evidence points to the contrary. Cf. Reuben Stiefel, 9 T.C. 576 (1947). The trust indentures themselves give the trustees the usual broad powers of management and control over the trust corpus. However, the partnership agreement goes a long way in abrogating the powers conveyed in the trust agreements and subjecting the trustees, as such, to the interests of the petitioners. First, the partnership agreement vests the management of the partnership exclusively to Ray and Frances in their individual capacities. It prohibits the trusts' disposing of their partnership interest in any manner without the consent of the managing partners. Ray and Frances were given complete control of all withdrawals from the partnership bank account. Neither in 1957 nor in any year subsequent have any partnership funds been distributed to the trusts. The partnership agreement makes explicit provisions for the buying out of the interest of either managing partner in the event he or she should choose to retire or should *211 die. The purchase price for the retiring partner's interest would be an amount predetermined by the partners adjusted for changes in the retiring partner's capital account made subsequent to the valuation. This valuation made by the partners would include the goodwill of the partnership as a going concern. For the trusts, on the other hand, there was no provision for the buying out of the interest before the beneficiary reached age 21. The partnership agreement did provide for the buying out of the interest of any of the children after age 21 should any of them choose to withdraw from the partnership. The purchase price of the child's interest, however, would not be a value set by all the partners which would approximate a fair market value but rather would be the current cash value of the child's one-third interest in ten $10,000 insurance policies on the lives of Ray and Frances. Under the terms of the insurance policies, in 11 years from the year of the purchase thereof, when all three children will have reached age 21, the total current cash value, assuming all premiums have been paid as due and no loans have been made against the policies, will be about $30,000. This amount is *212 considerably less than the $54,000 which is the agreed value of the total of the children's interests as stated in the partnership agreement, even without giving consideration to any increase which might occur over the 11-year period. We think that the facts that the corpus of the trusts is bound up in a partnership controlled by the donors, that the trustees' powers over the trusts are to be subject to the control of the donors as managing partners with no right in the trustees on their own initiative to sell the partnership interests they hold, and that the donee children after they reach age 21, can sell out their interest only at a price unrelated to and most likely considerably less than the fair market value thereof, are all indicative of control in the donor petitioners which militate against the recognition of the trusts as partners. In addition, the trusts maintained no books or records of their own. No distribution of partnership earnings was made to the trusts in 1957 or any year subsequent. The trusts maintained no bank accounts and made no investments. There were withdrawals made from the partnership which were charged to the trusts' capital accounts. These withdrawals *213 were used for the following purposes: $6,455.18 for swimming pool; $760 for an automobile; $164.89 for gasoline; $60 for a health club; $50 for tuition for one of the children; $1,860.24 Federal income taxes for the six trusts for 1957; $245.10 for State taxes; and $1,860 estimated Federal taxes for 1958. It appears that all these expenditures for which the capital accounts of the trusts in the partnership were charged, with the exception only of the $1,860.24 for income taxes incurred by the trusts, were for the benefit not of the trusts but of the petitioners. Our conclusion from all the facts is, therefore, that petitioners retained so many controls over the partnership assets purportedly transferred to the trusts that in reality they remained the substantial owners thereof and, consequently, for income tax purposes the trusts were not partners in Ray Offord Logging. In support of their position the petitioners point out that on an assumed business name certificate executed by the partnership the three children were listed as partners; that the partnership deposited with its bank copies of the assumed name certificate, the trust agreements, and partnership agreement; that on *214 State personal property returns for the years 1958, 1959, and 1960, the three children were stated to be partners; and that the petitioners did purchase the ten $10,000 insurance policies called for in the partnership agreement to implement the buying out of a retiring partner's interest and contend that these facts all evidence the reality of the trusts. The factors specified by petitioners are primarily procedural in nature. On a different set of facts these procedural actions might be corroborative of the existence of the trusts as partners but in our view do not rebut the substantive facts in this case that the petitioners in their individual capacities retained complete control over the trusts even to the extent of expending $9,595.17 of the $11,455.41 withdrawn from the partnership and charged to the capital accounts of the trusts apparently for their own personal benefit and not for the benefit of the children. Cf. Ralph C. Hitchcock, 12 T.C. 22 (1944). The acquisition of the insurance policies was to facilitate the purchase of any retiring partner's interest. This fact, however, in no way lessens the control which the petitioners retained in their individual *215 capacities over the trusts created. Because of certain adjustments not here in issue, Decision will be entered under Rule 50. Footnotes
1. SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. (e) Family Partnerships. - (1) Recognition of interest created by purchase or gift. - A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person.↩