Laurence V. KANTER, Appellant,

v.

UNITED STATES of America,
Appellee.

Ruth WOLINS, Appellant,

v.

UNITED STATES of America,
Appellee.

Jerome B. KANTER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15757–15759.

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1959.

Bryant R. Burton, Adrian P. Marshall, Los Angeles, Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., Thomas N. Chambers, Lee A. Jackson, Robert N. Anderson, James P. Turner, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Ed-

ward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and CHAMBERS and BARNES, Circuit Judges.

CHAMBERS, Circuit Judge.

Appellants sued in the district court to recover income taxes paid under deficiency assessments for the years 1945, 1946 and 1947. The rulings were wholly adverse to their contentions and they appeal.[1]

The controversies arise out of three 15 year trusts established in 1944 by Minnie Kanter. Equal separate trusts were established for her three adult children: Laurence V. Kanter, Jerome B. Kanter and Ruth Kanter Wolins.[2] A sort of reciprocal arrangement of trustees, all members of the family, was established. Laurence's trustees were his sister Ruth and her husband, Albert Wolins. Jerome's trustees were Ruth and his brother Laurence. Ruth's trustees were husband Albert and brother Laurence. Jerome was not a trustee and it is suggested the reason he was not was because he was away in the army. Income in each trust was to be accumulated in each trust for five year periods, then paid to be beneficiary.

The corpus of each trust initially was 6.81 per cent of the stock of Shop 'N Save, a Kanter family corporation organized under the laws of California. Mrs. Kanter carved the stock out of her 66.26 per cent stock ownership of Shop 'N Save, reducing her ownership to 45.83 per cent. Immediately before (as well as immediately after) the creation of the trusts the three children each owned in his own right without restriction 6.81 per cent of the stock of the same com-

pany. The remaining 13.31 per cent of the stock not mentioned above was owned by Mrs. Kanter's husband, Harry, who was also the father of the three children, appellants here. Apparently father Harry, sons Laurence and Jerome, and son-in-law Albert all worked in the business.

In contemplation by all, the day the trusts were established, was the transfer of a substantial portion of the Shop 'N Save corporation's assets to a family partnership to be established with general and limited partners, the partnership to be known as Kanter & Wolins. This event, establishment of the partnership, occurred about April 1, 1944. Eventually in 1950 most of the assets of Kanter & Wolins were exchanged for common stock of a new Kanter corporation: McDaniel's Markets, the partnership receiving the stock in exchange for assets.

The theory of the deficiency assessments, which was accepted by the district court, was that the income of the trust was subject to the unfettered command of the beneficiaries and each should be taxed for the income in his trusts. Or stated differently, the Internal Revenue Service says the trusts were illusory.

As stated above, the trusts provided that income should be retained in the trusts and distributed every five years. But a discretionary provision was included as follows:

> "In the sole and exclusive discretion of the trustees the accumulated income may be paid to the beneficiary at any other time or times than set forth herein if in their opinion the said beneficiary does not have sufficient income from other sources to provide for his proper support, maintenance, comfort, education and recreation."

---

1. Separate actions were filed in the district court. The three cases were tried together and separate judgments entered. Separate appeals were taken, but, by order of this court, a consolidated transcript and consolidated briefing were authorized. The three cases are no different in any material way.

2. Secondary beneficiaries were provided in each trust. In Laurence's trust, these secondary beneficiaries were Jerome and Ruth. In Jerome's trust they were Laurence and Ruth. In Ruth's it was her husband Albert, if he survived; otherwise Laurence and Jerome.

No provision whatsoever was made for invasion of the corpus for needs or desires of the beneficiaries.

The appellants rely heavily on the fact that all control of the trust corpus was absolutely given up by Mrs. Kanter. Then they say discretionary trusts are not bad and family trusts are not bad. They argue that there is no evidence that the beneficiaries exercised any control and that the trust instruments denied them control.

■ The government calls the arrangement a sham and tax evasion device. It waxes quite moral about the matter. But tax evasion is not the test. The problem is simply whether the tax avoidance plan succeeds with propriety under the law. Thousands and thousands of Americans buy municipal bonds just for tax evasion purposes. No doubt other thousands of Americans have recently bought a small amount of corporate stock to take advantage of the provision in the statute exempting the first fifty dollars of corporate dividends from the federal income tax. Such is respectable and there is no evidence that the taxpayers and their plan were any less respectable.

Of course, since the Clifford decision[3] family trusts have been pleasant preserves for the Internal Revenue Service to go sniffing. And ofttimes the government's reward for such searching has been handsome.

■ Family trustees are permissible, and families should not be punished taxwise for merely not seeking out the service of a friendly non-family organization to act as one's trustees or a wholly independent strict trustee. But if one sets up a family trust one cannot substitute "family" for "business" for the terms of the trust. All too often the family trust is executed cavalierly and sloppily. And that is what happened here. So the district court denied relief and we affirm.

We do not believe the agreements alone, as drawn, require the result reached here. We do not condemn the agreements. The agreements are simply the starting point, a point calling for close inspection of all facets.

■ To us, one circumstance in the management of the trusts which justified the trial court's conclusion that the beneficiaries controlled the income was the fact that in the years 1945 to 1949 inclusive the partnership of Kanter & Wolins had substantial annual net incomes, yet nothing was paid to the trusts. Only credits to the partnership interests were set up by Kanter & Wolins—nothing remitted. Also, at the end of five years nothing was paid to the trustees and nothing remitted to the beneficiaries. And in Kanter & Wolins, Laurence drew a "salary," was a partner in his own right as well as a trustee-partner. Jerome drew a modest "salary" and was partner in his own right. Ruth was a partner in her own right and a trustee-partner. In addition, Ruth's husband was a partner in his own right and as a trustee. This flagrant unexplained deviation (failure to collect the income) due the trust under the agreements and the failure of the beneficiaries to insist that the trust's terms be enforced, justified the court in concluding that the trust agreements didn't mean much except that Mrs. Kanter had given some of her property to her children. The parallel inference, that if the money could be left in the partnership it also could come right through the trusts to the beneficiaries, we think equally permissible. By indifferent disregard of the trust agreements, as sort of a matter of common consent, the family has opened the door for the tax collector to come in and fill his pails. The facts that the trusts had no independent books and that the trust accounts were only to be found on the books of Kanter & Wolins also were circumstances buttressing the conclusion that the trusts lacked independent vitality.

The record shows certain events in the trust history after the income tax years

3. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

in question. The facts thereof were stipulated to by the parties, the appellants reserving their objections as to materiality. The stipulation stated that in 1950 the Kanter & Wolins partnership set up the corporate McDaniel's Markets and that in a six year period McDaniel's Markets suffered substantial losses in four of the years. Yet no effort was made to get the trusts out of this investment. We do not know how they could have eliminated this investment. The court admitted the evidence contained in the stipulation and this is one of appellants' points on appeal. It is true, as appellants say, that income tax incidence is to be tested generally by the events of the years in question. But that is not to exclude subsequent events which throw light on the original purpose; particularly, when legitimate inferences from demonstrated conduct amount to admissions. We are not inclined to second guess the business judgment of the trustees. We assume, while careless about the niceties of trust requirements, the trustees and beneficiaries never lost sight of the universal human aim of making money, and that their course was dictated accordingly. We would give these subsequent events little weight, but do hold they were circumstances entitled to be considered by the trial court. While the trial court may have placed too much emphasis on the subsequent events, we see no reason for reversal. The conclusion of the court was amply justified in the setting of the trusts from three circumstances: the lack of books, failure of the trusts to collect their income annually and the fact that at the end of five years when income was required to be paid over to the trustee beneficiaries no one bothered to pay the income to either the trustees or the beneficiaries. The record does not even indicate that anyone asked that the income be paid to the trusts or that the trustees pay the beneficiaries.

Of course, the government contends that even though all of the facts were the subject of stipulation, the trial court is entitled to some intendments on its findings of ultimate fact, even though as triers of fact we might disagree. We do not reach this argument because in our view the judgment as rendered was required. Although we do not base our conclusion on as many blocks as the district court used, and confine it to a more limited area, we are satisfied its conclusion was right.

Judgment affirmed.