ROY C. ACUFF AND WIFE, MILDRED D. ACUFF, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70173. Filed October 31, 1960.

*Ward Hudgins, Esq.*, and *Richard H. Frank Jr., Esq.*, for the petitioners.

*George L. Hudspeth, Jr., Esq.*, and *Jack D. Yarbrough, Esq.*, for the respondent.

### OPINION.

DRENNEN, *Judge:* Respondent determined deficiencies in petitioners' income tax for the calendar years 1952, 1953, and 1954 in the amounts of $16,547.30, $21,062.84, and $5,790.40, respectively. The deficiencies as determined by respondent result from certain minor adjustments in petitioners' income, and the inclusion in petitioners' income for each of the years of all of the income reported by a partnership, Acuff & Acuff, in which the petitioners individually and Roy C. Acuff as trustee of a trust established by petitioners for the benefit of their minor son were purportedly equal one-third partners. The petition puts in issue only the question of taxation of the income reported by the partnership, which is dependent upon (1) whether petitioners are taxable on the income of the trust created

for the benefit of their minor son; and (2) whether the partnership is valid for income tax purposes.

All of the facts were stipulated and are found as stipulated and are incorporated herein by this reference.

Petitioners are husband and wife residing in Hendersonville, Tennessee. They filed their joint Federal income tax returns for the calendar years 1952, 1953, and 1954 with the district director of internal revenue, Nashville, Tennessee. Petitioners have one child, Roy Neill Acuff, who was born July 25, 1943.

Prior to January 1, 1952, petitioner Roy C. Acuff, a professional entertainer, hereafter referred to as Roy, was the sole owner of the resort property and business known as Dunbar Cave, located near Clarksville, Tennessee, which consisted of an amusement park, hotel, and supper club and which was operated at a natural cavern of the same name. Roy operated this property as a sole proprietorship.

As of January 1, 1952, petitioner Mildred O. Acuff, hereafter referred to as Mildred, was the owner of a one-half interest in a music publishing partnership known as Acuff-Rose Publications. The partnership agreement entered into on January 1, 1952, by Fred Rose, Wesley Rose, and Mildred Acuff established the interests of the partners to be one-half in Mildred and one-fourth each in Fred and Wesley Rose, and it also provided that the death of any partner should effect a dissolution of the partnership except in certain circumstances. One such exception was that in the event that the first partner to die should be Mildred, her interest should pass to Roy if he should be living. If Roy was not living the surviving partners agreed to continue the business for a period of 2 years, at which time the surviving partners had the right to purchase Mildred's interest for $100,000. Other exceptions gave each Rose the option to purchase the interest of the other in the event of the other's death.

The above Acuff-Rose partnership agreement was modified by an agreement entered into in December 1954 by Mildred Acuff and Wesley Rose, which stated that Fred Rose had died since the January 1, 1952, agreement had been made and that Mildred and Wesley were the sole surviving partners and had elected to carry on the partnership. This agreement stated that the interests in the partnership were one-half in Mildred and one-half in Wesley. This agreement provided further that upon the death of either partner his or her respective share of the partnership should pass to their respective spouses, if living, but the surviving partner was given the right to purchase the interest of the deceased partner at fair market value at the end of 6 months following the death of the deceased partner. This agreement made no reference to an assignment of any of her partnership interest by Mildred.

Acuff-Rose Publications is a leading music publishing firm specializing in the field of country music. Its income is derived from publishers' royalties which are paid for commercial use of all songs which have been published by Acuff-Rose Publications. Publishers' royalties are received by the publisher over a period of years after the initial publication of the song. Acuff-Rose Publications also owns contracts securing the exclusive services of some leading songwriters and enjoys an outstanding reputation in the music business.

Effective January 1, 1952, Roy transferred to himself as trustee for the benefit of his infant son, Roy Neill Acuff, age 9, a one-third interest in Dunbar Cave, and Mildred transferred to Roy as trustee aforesaid a one-third interest in her one-half interest in Acuff-Rose Publications by the following written instrument:

### TRUST AGREEMENT

This AGREEMENT, made and entered into on this the 1st day of January, 1952, by and between Roy Acuff and Mildred Acuff, of Nashville, Tennessee, hereinafter referred to as Trustors, and Roy Acuff, of Nashville, Tennessee, hereinafter referred to as Trustee.

WITNESSETH that:

WHEREAS, Mildred Acuff is now the owner of one-half (½) interest in a partnership operating a music publishing business at Nashville, Tennessee, known as Acuff-Rose Publications, the other partners therein being Wesley Rose and Fred Rose; and,

WHEREAS, Roy Acuff is now the sole owner of the proprietorship business operating a cave and vacation resort at Clarksville, Tennessee, known as Dunbar Cave; and,

WHEREAS, the Trustors have agreed to enter into a partnership, each contributing the above assets for the purpose of operating both of these assets.

Now, THEREFORE, for and in consideration of the sum of One Dollar ($1.00), cash in hand paid, the receipt of which is hereby acknowledged, the love and affection which the Trustors have for the beneficiary of this trust herein named, other good and valuable considerations, and the agreement of the Trustee to perform the duties herein imposed, the Trustor, Mildred Acuff, does hereby give, transfer, assign, convey and deliver unto the Trustee, for the uses and purposes hereinafter set forth, a one-third (⅓) undivided interest of her one-half (½) interest of the partnership of Acuff-Rose Publications, and Trustor, Roy Acuff, does hereby give, transfer, assign, convey and deliver unto the Trustee, for the uses and purposes hereinafter set forth, a one-third (⅓) undivided interest of the proprietorship Dunbar Cave. These two assets shall constitute the corpus of the trust.

1. The said Trustee shall hold the said property in trust in the manner and upon the terms, conditions and limitations herein set forth, and not otherwise.

2. Roy Neill Acuff is the sole beneficiary of this trust.

3. The Trustee shall accumulate the income from the corpus of the trust and add said income to the corpus of the trust as additional corpus, and invest and reinvest said additional corpus until the beneficiary shall attain the age of 21 years, at which time the Trustee shall pay to the beneficiary all income from the investments made by funds until the beneficiary reaches the age of 28 years. When the beneficiary reaches the said age of 28 years, this trust shall terminate

and the Trustee shall pay and deliver to the beneficiary all of the assets in said trust.

4. The Trustors declare that they have been fully advised as to the legal effect of this Agreement and informed as to the character and amount of the property hereby transferred and conveyed, and now declare that this instrument shall be irrevocable, and that they hereafter stand without power at any time to revoke, change, or annul, any of the provisions hereof, and that same shall be effective from and after January 1, 1952.

5. The Trustee and his successors in trust, as herein provided, is directed, authorized and empowered to become, as Trustee only, a general partner with Roy Acuff and Mildred Acuff in the operation of Dunbar Cave and the one-half (½) interest in Acuff-Rose Publications. It is intended that the Trustee shall be a general partner only as Trustee, and that the Trust Estate shall share ratably all losses in the operation, and shall be entitled to a ratable proportion of all earnings of the operation. The Trustee is directed to confer with Mildred Acuff and Roy Acuff and to enter into a Partnership Agreement, which after being advised by counsel, is in his opinion satisfactory and fair. The Trustee as such shall exercise all of the rights, duties and liabilities of a partner, and to this end shall be entitled as a partner to generally carry on the business. The Trustee shall be entitled, however, to allow the business to be conducted by the partner, or partners, other than the Trustee, and the Trustee shall only be liable for failure to exercise reasonable business judgment regarding the management of said partnership.

6. During the existence of this trust the trustee shall have full power to hold, manage and control the same, collect and receive the income arising therefrom, to invest and reinvest the income from the entire corpus until the beneficiary reaches the age of 21 years and after that date to invest and reinvest the income from the partnership in such manner as the Trustee shall deem advisable, without being limited to investments required of fiduciaries under the statutes of the State. Likewise, said Trustee shall have the power to change said investments as his best judgment may dictate. Said Trustee shall have the right to enter into any reorganization, liquidation, consolidation, or other financial re-adjustment affecting securities, take up or sell rights, or exercise any of the privileges accruing to him by virtue of his control of the corpus of this Trust, when in his judgment of same it seems advisable and desirable for the preservation and enhancement of the Trust. In the event of the dissolution of the partnership the Trustee shall have the power to sell, with the consent of the other partners, the partnership interest and reinvest the proceeds as the corpus of the Trust as he deems advisable.

7. The title of the trust estate is vested in the Trustee, for the purposes herein set out, but at his death or inability to serve, Mildred Acuff shall serve as Trustee and be vested with all the powers and be bound by all the terms of this instrument. In the event of the death or inability of both the said Roy Acuff and Mildred Acuff to serve, the *Broadway Bank and Trust Co.* shall serve as Trustee under this agreement.

8. The Trustee is expressly authorized to determine what expenses and other charges shall be charged against the principal, and what against income.

9. The Trustee, if it be Roy Acuff or Mildred Acuff, shall not be required to give bond; neither shall he make reports or statements to any court or tribunal, but any successor trustees shall make a bond as required by Tennessee Statutes and make an annual report to the beneficiary.

10. The Trustee shall have the power to use any part of the trust income or corpus in the event of an emergency for the support or education of the

beneficiary if in the discretion of the Trustee it is necessary for the well being and education of the beneficiary.

11. Neither the corpus nor the income of the trust fund shall be liable for the debts of the beneficiary hereof, nor shall the same be subject to the superior rights of creditors of the beneficiary under any writ, proceeding at law, or in equity, and the beneficiary shall not have the power to anticipate or dispose of his interest in the trust funds on the income produced thereby.

12. The Trustee is authorized to incur such expenses in the administration of this Trust as in his discretion may be necessary, including taxes, etc. He is further authorized to employ such agents, attorneys, etc., as may be necessary and proper to the administration of the estate, and to pay them a reasonable compensation for their services.

13. The Trustor, Mildred Acuff, is bound by certain limitations on her interest in the Acuff-Rose Publications, a portion of which is to form the corpus of this Trust. The Trustee has been informed of these provisions as set forth in Paragraph XII of the Partnership Agreement of Acuff-Rose Publications, and is specifically directed to comply with the provisions of said agreement relative to the purchasing of the interest of the other partners in the event of death and relative to selling the interest herewith created in accordance with the directions to Mildred Acuff in said Partnership Agreement.

The Trustee herein named joins in this instrument as evidence of his agreement to perform the duties herein imposed, and to acknowledge custody of the trust estate.

IN WITNESS WHEREOF, the parties hereunto have signed their names, duly executing this instrument.

/s/   Roy Acuff
ROY ACUFF
*Trustor*

/s/   Mildred Acuff
MILDRED ACUFF
*Trustor*

/s/   Roy Acuff
ROY ACUFF
*Trustee*

STATE OF TENNESSEE
County of Davidson

Personally appeared before me, the undersigned authority, a Notary Public in and for said County and State, the within named Roy Acuff and Mildred Acuff, the contracting parties, with whom I am personally acquainted, and who acknowledged that they executed the within instrument for the purposes therein contained.

Witness my hand and official seal at Nashville, Tennessee, this 6 day of February, 1952.

/s/   Helen S. Draper
*Notary Public*

My Commission Expires : 4/25/54.

Also effective January 1, 1952, Roy and Mildred, in their individual capacities, and Roy as trustee aforesaid entered into the following written partnership agreement which purported to place the entire interests in Dunbar Cave and Acuff-Rose Publications, formerly owned by Roy and Mildred, in a partnership known as Acuff & Acuff,

in which Roy, Mildred, and Roy as trustee were each equal one-third partners:

## PARTNERSHIP AGREEMENT

This Partnership Agreement is made and entered into on this first day of January, 1952, by and between Roy Acuff, Mildred Acuff, and Roy Acuff, Trustee, all of Nashville, Tennessee, Witnesseth:

WHEREAS, Mildred Acuff is now owner of an interest of a partnership operating a music publication business, Nashville, Tennessee, known as Acuff-Rose Publications, and has given one-third (⅓) of her interest in trust to her son with Roy Acuff as Trustee; and,

WHEREAS, Roy Acuff is now owner of a business known as Dunbar Cave at Clarksville, Tennessee, and has given one-third (⅓) interest in trust to his son with Roy Acuff as Trustee; and,

WHEREAS, the parties are desirous of entering a partnership agreement in accordance with trust agreement heretofore executed by the party [*sic*];

Now, therefore, FOR AND IN CONSIDERATION OF the mutual promises, undertakings and agreements by and between the parties, it is agreed between the parties as follows:

### I.

The name of the partnership shall be known as Acuff & Acuff.

### II.

The partnership shall continue in full force and effect until terminated by mutual agreement of the parties, or as otherwise provided herein.

### III.

The partnership is formed for the purpose of engaging in and carrying on (1) a resort business in the operation of property known as Dunbar Cave near Clarksville, Tennessee, (2) for the purpose of administering and operating the one-half (½) interest in the partnership known as Acuff-Rose Publications.

### IV.

The capital of said partnership shall be One Hundred Ninety Thousand ($190,000.00) Dollars, which is being contributed by the partners, and additional capital shall not be required except by mutual agreement.

### V.

The interests of the partners in said partnership are as follows:

| | |
|---|---|
| Roy Acuff | one-third |
| Mildred Acuff | one-third |
| Roy Acuff, Trustee | one-third |

### VI.

The partners shall share the profits resulting from the operation of the partnership in proportion to their interest therein, and likewise share the losses, if any, in connection with the operation of said partnership in proportion to their interest therein.

### VII.

The partnership shall maintain separate accounts for the business of Dunbar Cave and for the interest in Acuff-Rose Publications. All money received from each source shall be deposited in the respective bank accounts when received and all checks drawn on said accounts shall be signed with the firm name and

evidenced by such signatures as may be agreed upon. The profits of said partnership shall be determined at the end of each calendar year and shall be distributed to the partners.

### VIII.

The partners Roy Acuff, individually, and Mildred Acuff shall receive a salary in the amount of Ten Thousand ($10,000.00) Dollars per annum, which salary shall be paid before the profits for distribution are determined, and Roy Acuff, Trustee, shall receive as a trust share of the profits one-third (⅓) after the above salaries have been paid.

### IX.

No partner shall have the right to pledge any asset belonging to the partnership for any purpose whatsoever, except in the due course of trade.

### X.

The partnership shall employ the services of a competent accountant to assist in preparing a financial statement, which shall be rendered at the end of each year, showing the condition of the partnership business. Said statement shall be made available to all of the partners and shall show the profits and losses of the business for the preceding year. If a sufficient fund is on hand during the year, advances may be made to each partner and charged to the partner receiving the same; and all accounts for the partners shall be balanced at the end of the year.

### XI.

The parties to this agreement specifically recognize the partnership agreement of Acuff-Rose Publications and, in particular, recognize Paragraph XII of that agreement and herewith bind themselves to abide by the terms and provisions of said agreement, in that they agree to purchase or sell their interest in that partnership as provided in Paragraph XII of the Partnership Agreement of Acuff-Rose Publications.

### XII.

The partners Roy Acuff and Mildred Acuff shall give whatever of his or her time that may be necessary to the proper conduct of the partnership business and shall receive the salaries stipulated above for said services. The partner Roy Acuff, Trustee, shall give whatever of his time that may be necessary as Trustee to the proper conduct of the partnership business.

### XIII.

The death of any partner shall effect the dissolution of the partnership herein entered into, but the dissolution of such partnership shall not affect or nullify the right and obligation of the surviving partners to continue the business of the partnership.

IN WITNESS WHEREOF, the parties hereunto set their hands:

/s/ Roy Acuff
/s/ Mildred Acuff
/s/ Roy Acuff

WITNESSES:
/s/ Mrs. M. L. Harris
/s/ Dick L. Johnson

No formal deed or conveyance in regard to the real and personal property of Dunbar Cave was executed by Roy other than the trust agreement and the partnership agreement set out above.

Acuff-Rose Publications filed partnership income tax returns for the years 1952 and 1953 with the district director of internal revenue, Nashville, Tennessee. The records of the district director fail to disclose that a return for Acuff-Rose Publications was filed for the year 1954.

Partnership income tax returns were filed for Acuff & Acuff for the years 1952, 1953, and 1954 with the district director of internal revenue, Nashville, Tennessee.

Fiduciary income tax returns were filed for the Acuff Trust for the years 1952, 1953, and 1954 with the district director, Nashville, Tennessee.

Petitioners filed gift tax returns in the year 1952 because of their gifts to the trust for their son, Roy Neill Acuff. These returns reflect that Roy made a gift to Roy Neill Acuff in the amount of $44,835.30 and that Mildred made a gift to Roy Neill Acuff in the amount of $33,502.91. The Internal Revenue Service made adjustments to these gift tax returns. The gift reported by Roy was reduced from $44,835.30 to $20,886.97 and the gift reported by Mildred was increased from $33,502.91 to $116,171.65. The decrease in Roy's gift was due in part to decreasing the reported value of Dunbar Cave because of a liability that had not been taken into consideration. The increase in Mildred's gift was due in part to increasing the value of Mildred's interest in Acuff-Rose Publications from approximately $100,000 as reported to approximately $205,000, and in part to a finding that Mildred had made a gift to her husband. These adjustments were agreed to by petitioners.

The partnership income tax returns of Acuff-Rose Publications for the years 1952 and 1953 did not contain balance sheets but set forth the partners' share of income from the partnership as follows:

| Partner | Share of income | |
|---|---|---|
| | 1952 | 1953 |
| Mildred Acuff | $105,651.20 | $121,906.91 |
| Fred Rose | 52,825.60 | 60,953.45 |
| Wesley H. Rose | 52,825.60 | 60,953.45 |
| Total | 211,302.40 | 243,813.81 |

The profit and loss statement of Acuff-Rose Publications for the year 1954 reflects a net profit of $113,566.31. Its balance sheet as of December 31, 1954, shows Mildred's interest in the net worth to be $71,109.17.

The partnership returns of Acuff & Acuff for the years 1952, 1953, and 1954 disclosed the following items of income or loss and ordinary net income:

|  | 1952 | 1953 | 1954 |
|---|---|---|---|
| Acuff-Rose Publications | $105,651.20 | $121,906.91 | $56,783.15 |
| Dunbar Cave | (14,530.76) | (15,322.01) | (5,927.58) |
| Ordinary net income | 91,120.44 | 106,584.90 | 50,855.57 |

Following is a summary of the balance sheets reflected in the partnership returns of Acuff & Acuff for the years 1952, 1953, and 1954:

|  | 1952 return | | 1953 return | | 1954 return | |
|---|---|---|---|---|---|---|
|  | Jan. 1, 1952 | Dec. 31, 1952 | Jan. 1, 1953 | Dec. 31, 1953 | Jan. 1, 1954 | Dec. 31, 1954 |
| *Assets* [1] |  |  |  |  |  |  |
| Investments | $100,508.73 | $110,155.42 | $110,155.42 | $104,482.06 | $104,482.06 | $71,109.17 |
| Depreciable assets, less reserve for depreciation | 134,535.91 | 129,277.44 | 129,277.44 | 132,467.97 | 132,467.97 | 123,805.02 |
| Total | 235,044.64 | 239,432.86 | 239,432.86 | 236,950.03 | 236,950.03 | 194,914.19 |
| *Liabilities and capital* |  |  |  |  |  |  |
| Mortgages payable | | | | | 43,125.00 | 28,750.00 |
| Partners' capital accounts | 235,044.64 | 239,432.86 | 239,432.86 | 236,950.03 | 193,825.03 | 166,164.19 |
| Total | 235,044.64 | 239,432.86 | 239,432.86 | 236,950.03 | 236,950.03 | 194,914.19 |

[1] The depreciable assets were those of Dunbar Cave and the investment asset figures are presumably the book value of Mildred's one-half interest in Acuff-Rose Publications.

Following is a tabulation of the partners' capital accounts as disclosed by the partnership returns:

|  | Capital account at beginning of year | Income | Withdrawals | Capital account at at end of year |
|---|---|---|---|---|
| *1952 return* |  |  |  |  |
| Roy Acuff | $78,348.22 | $33,706.82 | $43,366.11 | $68,688.92 |
| Mildred Acuff | 78,348.21 | 33,706.81 | 43,366.11 | 68,688.92 |
| Roy Acuff, trustee | 78,348.21 | 23,706.81 | | 102,055.02 |
| Total | 235,044.64 | 91,120.44 | 86,732.22 | 239,432.86 |
| *1953 return* |  |  |  |  |
| Roy Acuff | 68,688.92 | 38,861.63 | 42,929.76 | 64,620.79 |
| Mildred Acuff | 68,688.92 | 38,861.63 | 42,929.76 | 64,620.79 |
| Roy Acuff, trustee | 102,055.02 | 28,861.64 | 23,208.21 | 107,708.45 |
| Total | 239,432.86 | 106,584.90 | 109,067.73 | 236,950.03 |
| *1954 return* |  |  |  |  |
| Roy Acuff | 58,659.08 | 20,285.19 | 26,172.14 | 52,772.13 |
| Mildred Acuff | 83,890.95 | 20,285.19 | 26,172.14 | 78,004.00 |
| Roy Acuff, trustee | 51,275.00 | 10,285.19 | 26,172.13 | 35,388.06 |
| Total | 193,825.03 | 50,855.57 | 78,516.41 | 166,164.19 |

A net reduction of $43,125 was made in the partners' capital accounts between the closing accounts on the 1953 return and the begin-

ning accounts on the 1954 return. This was accomplished by reducing Roy's capital account by $5,961.71. Mildred's capital account was increased by $19,270.16. The capital account for the trust was decreased by $56,433.45. Schedule I of the partnership return for 1954 disclosed a mortgage payable item of $43,125. This item did not appear in the closing balance sheet of the 1953 return and was reduced to $28,750 in the closing balance sheet of the 1954 return. There was no increase in any asset corresponding to this mortgage payable item in the opening balance sheet in 1954, but, instead, the partners' capital accounts were decreased a net amount to equal it. There was no explanation of why the partners' capital accounts for the beginning of the year 1954 were adjusted in this manner.

The following income was reported on the fiduciary income tax returns of the Acuff Trust for the years 1952, 1953, and 1954.

|  | 1952 | 1953 | 1954 |
|---|---|---|---|
| Income from partnership | $23,706.81 | $28,861.64 | $10,285.19 |
| Interest |  | 47.06 |  |
| Total income | 23,706.81 | 28,908.70 | 10,285.19 |

The returns claim no deductions and show no distributions by the trust and show tax due for the years 1952, 1953, and 1954 in the amounts of $10,416.49, $13,877.88, and $2,710.37, respectively.

On their joint income tax returns for the years 1952, 1953, and 1954 petitioners reported the following items of income or loss:

|  | 1952 | 1953 | 1954 |
|---|---|---|---|
| Dividends | $100.00 | $110.00 | $75.00 |
| Interest | 2,562.50 | 1,415.68 | 29.32 |
| Business loss | (15,502.48) | (12,777.00) | (5,403.40) |
| Partnership income: |  |  |  |
| Acuff & Acuff | 67,413.63 |  | 40,570.38 |
| Acuff-Rose Publications |  | ¹ 77,723.26 |  |
| Adjusted gross income | 54,573.65 | 66,471.94 | 35,271.30 |

¹ Apparently intended as Acuff & Acuff.

Roy Neill Acuff (the son) rendered no personal services for the partnership of Acuff & Acuff and he had no control in the partnership in his individual capacity.

No separate books of account were kept for this partnership. Books and records were kept separately for the Dunbar Cave operations and for Acuff-Rose Publications. The income of the Acuff & Acuff partnership was determined by consolidating the profit or loss from the Dunbar Cave operation with the distributive share of the profit or loss attributable to the one-half interest of Mildred in the Acuff-Rose Publications partnership. No separate bank account was maintained in the name of the partnership of Acuff & Acuff, and no

separate office was established for it. No formal records of capital accounts were maintained for petitioners or for the Acuff Trust with respect to the partnership of Acuff & Acuff other than those recorded on the partnership returns.

Respondent determined that the entire income reported by the partnership of Acuff & Acuff for the years here involved was taxable to petitioners on the ground that Acuff & Acuff was not a partnership within the meaning of the Internal Revenue Code, and, that petitioners remained the true owners of the business interests allegedly conveyed by them to a trust for their son.

The basic question is whether the overall plan of the petitioners as evidenced by the legal documents and the conduct of the parties in actually carrying out the plan resulted in the trust becoming the real owner of the partnership interest which petitioners claim they gave it.

Petitioners have the burden of proof. They attempt to meet this burden by introducing in evidence by way of stipulation the trust agreement, the partnership agreement, and the tax returns filed by the trust, the partnership, and themselves. They argue that on the face of these agreements the trust is a valid and legal trust entitled to be recognized as a separate taxable entity under sections 166 and 167 of the 1939 Code and the so-called Clifford regulations (Regs. 118, secs. 39.166 and 39.167), and under sections 671 through 678 of the 1954 Code; the partnership is a valid family partnership under sections 191 and 3797(a)(2) of the 1939 Code (applicable to partnership taxable years beginning prior to December 31, 1954—see sec. 771(a), I.R.C. 1954); and this is sufficient to carry their burden of proof. Except for the tax returns, we have no evidence that the transactions as written up were actually carried out or that the parties in their conduct ever recognized the reality of the trust and partnership. Neither of the petitioners testified, and they appear on the record before us to be the only persons, in either their individual, partnership, or fiduciary capacities, who should have been interested in or have knowledge of these facts. We do not think the bare legal documents alone, plus the tax returns, is sufficient evidence to overcome the presumptive correctness of respondent's determination that petitioners remained the true owners of the properties purportedly conveyed to the trust and partnership. The question is more objective. For us to decide this issue on the legal documents alone would be like trying to decide whether a candy box contains candy of a certain kind without opening the box.

But be that as it may, we think the evidence before us and the reasonable inferences that may be drawn therefrom indicate that the trust and partnership were never created or activated in fact and consisted only of words written on sheets of paper. In our opinion,

trusts and family partnerships must have substance as well as form to be recognized for tax purposes; and this is particularly true where the trust beneficiary is a minor, the trustee is a donor whose accounts need not be supervised by a judicial or otherwise independent tribunal, the purported donors, acting in one capacity or another, are the only partners, and there is no apparent motive or reason for creating the trust and the partnership except for tax avoidance purposes. *Henry S. Reddig*, 30 T.C. 1382; *Salvatore Apicella*, 28 T.C. 979.

The trust agreement purports to transfer to the trustee a one-third undivided interest in Mildred's one-half interest in the partnership of Acuff-Rose Publications and a one-third undivided interest in Roy's proprietorship of Dunbar Cave. The trustee is given broad powers to receive, manage, control, invest, and reinvest the income of the trust, but is specifically directed to enter into a partnership agreement with Roy and Mildred for operation, management, and control of the entire corpus of the trust. The trustee, who is also one of the donors, is directed to "exercise all of the rights, duties and liabilities of a partner" and as such to "generally carry on the business," but the trustee is also authorized to allow the business to be conducted by the other partners. The trustee is also specifically authorized to comply with the provisions of the Acuff-Rose partnership agreement relative to buying and selling the interest of a deceased partner in the event of the death of one of those partners.

The partnership agreement, after referring to the trust agreement, states that its purpose is to operate Dunbar Cave, and to administer and operate the one-half interest in Acuff-Rose Publications, keeping separate accounts and bank accounts for each; that the capital is $190,000 contributed by the partners; that the partnership interests are one-third each in Roy, Mildred, and Roy as trustee and profits and losses will be shared in that proportion; that Roy and Mildred shall give such time as necessary for the conduct of the partnership business and shall receive stipulated salaries therefor; and that the parties again bind themselves to abide by the terms of the Acuff-Rose partnership agreement.

Petitioners argue that under the above agreements they did not retain such dominion and control over the trust as to be treated as the owner of any portion of the trust under sections 673 through 678 of the 1954 Code and therefore may not be taxed on the income of the trust for 1954 by virtue of section 671, and for the same reason may not be taxed on the income of the trust for the years 1952 and 1953 under the so-called Clifford regulations upon which the 1954 Code provisions are, to a large extent, based.

Section 671 of the 1954 Code provides that the grantor shall not be taxed on the income of the trust solely on the grounds of his dominion and control over the trust except as specified in sections

673 through 678. Respondent argues that petitioners may be taxed on the income of the trust under either section 674, relating to the power to control the beneficial enjoyment of the corpus or income, or section 675, relating to retention by the grantor of specified administrative powers. Had this trust and partnership been established other than on paper we would have to decide whether, under the entire setup as envisioned by the trust and partnership agreements and as actually conducted by the donors as partners and trustee, the grantors of the trust retained any of the powers that would permit taxation of the trust income to them under section 671 of the 1954 Code or would require taxation of the trust income to them under the Clifford regulations and cases decided under the 1939 Code. But, we think it is clear that where the trust and partnership have no substance and the grantors continue to hold, manage, and control the properties as though the trust and partnership agreements had not been written, these questions need not be answered.

While we recognize that section 671 of the 1954 Code appears to limit more specifically than did the so-called Clifford regulations the taxation of income of a trust to the grantor solely on the grounds of his dominion and control over the trust, we think that in these donated trust-family partnership situations, the first and basic question remains the same under the 1954 Code as it was under the 1939 Code, being whether the fiduciary partner was the real owner of the partnership interests which the parent-donors claim they gave him. *Henry S. Reddig, supra; Jack Smith,* 32 T.C. 1261. If there was no bona fide gift of a partnership interest, or of the assets which were put into the partnership under the overall plan, the trustee will not be recognized as either the owner of the partnership interest or as a partner, and the donors will be taxed on all of the partnership income. The Ways and Means Committee report at the time of the enactment of section 340 of the Revenue Act of 1951, amending the family partnership provisions of the 1939 Code, supports this conclusion. We quote a pertinent part of that report in the footnote.[1] See also

---

[1] H. Rept. No. 586, 82d Cong., 1st Sess., p. 33:

"The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of *Helvering* v. *Clifford* (309 U.S. 351 [*sic*]). *The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny.* All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale." (Emphasis supplied.)

sec. 1.704–1(e)(2), Income Tax Regs.; *Mathew J. Spiesman, Jr.,* 28 T.C. 567, affd. 260 F. 2d 940 (C.A. 9, 1958); *Toor* v. *Westover,* 200 F. 2d 713 (C.A. 9, 1952), certiorari denied 345 U.S. 975.

The burden of establishing the validity of the trust and the family partnership is on petitioners. *Commissioner* v. *Culbertson,* 337 U.S. 733; *Salvatore Apicella, supra.* The validity must be established not only by the legal documents by which they were purportedly created but also by evidence showing that the trustee actually became a bona fide partner acting for the interests of the beneficiary of the trust rather than for the interests of the donors. *Kanter* v. *United States,* 262 F. 2d 761 (C.A. 9, 1959). This has not been established by the evidence presented. In fact, what little evidence there is in the record of the conduct of the parties with respect to the trust and partnership assets after the purported creation thereof indicates to the contrary.

It is stipulated that no formal deed of conveyance other than the deed of trust and the partnership agreement was made by Roy with respect to any of the real or personal property of Dunbar Cave. There is no evidence that either the deed of trust or the partnership agreement was recorded or published. Books and records were kept for the Dunbar Cave operation but they were not offered in evidence and there is nothing to indicate that the management, operation, or control of this business varied at all after 1951 from its modus operandi prior to that time.

The transfer of Mildred's interest in Acuff-Rose Publications was not recognized in the partnership agreements of Acuff-Rose, one of which was apparently executed about the same time the trust agreement and the Acuff & Acuff partnership agreement were executed, and the other of which was executed about 3 years later. Both of these agreements recognized Mildred alone as owning a one-half interest in the partnership and made no mention of the trust or Acuff & Acuff, which, on the later date at least, purportedly owned Mildred's entire one-half interest in Acuff-Rose Publications. In both of these agreements Mildred provided for the disposition of her interest in Acuff-Rose Publications and the assets which produced all the income here involved, in the event of her death, and in each case it would pass to someone other than the partnership of Acuff & Acuff or the trust.

No separate accounts were kept for the partnership of Acuff & Acuff; no separate bank accounts were maintained in its name; and no separate office was established for it. No formal records of the capital accounts of petitioners and the trustee in the Acuff & Acuff partnership were kept. There is no evidence that this partnership ever filed notice of operating under a fictitious name, that it ever took

an active part in the operation, management, or administration of either of the two businesses, or that it ever did anything at all except file income tax returns.

The partnership returns themselves are of interest, particularly when compared with the returns filed for the trust. The partnership returns reported that the trust made no withdrawal of income from the partnership in 1952 although its share of the income was over $23,000 and the other two partners withdrew considerably more than their distributive shares, including salaries; in 1953 the trust withdrew only $23,000 of its $28,000 distributive share of the partnership income, while the other two partners again drew more than their shares; and in 1954 each of the partners withdrew an equal amount which in each case exceeded their distributive shares.

Although the trust purportedly withdrew from the partnership $23,000 in 1953 and $26,000 in 1954, it reported no distributions or expenditures in any of the 3 years, and the taxes shown to be due from it total considerably less than the sum apparently available for investment by the trustee. Yet the trust returns report no income from any source other than the partnership, except for $47.06 of interest reported for 1953. There is no evidence of any investment of the trust funds or other application of the trust withdrawals. Nor is there any indication that there was ever any separation of the income and capital of the alleged trust.

At the end of the year 1953 the balance sheet of the partnership indicates the ending capital accounts of the partners to be $64,620.79 each for Roy and Mildred, and $107,708.45 for the trustee. The capital accounts at the beginning of the year 1954 show Roy's as $58,659.08, a reduction from his ending balance for 1953 of $5,961.71; Mildred's at $83,890.95, an increase of $19,270.16 over the 1953 ending balance; and the trustee's at $51,275, a decrease of $56,433.45, or more than 50 per cent of its ending 1953 balance. There is no explanation of why the yearend balances for 1953 differed so radically from the beginning balances for 1954 or how the adjustments were made—but standing alone they indicate that the purported interest of the trust in the partnership could be manipulated at will, and lend support to the conclusion that this trust and partnership were established on paper only and were not real.

We realize that respondent in effect recognized the validity of these gifts and of the partnership when he determined the gift tax liability of Mildred and Roy for the year 1952. But however lamentable it might be that respondent is attempting to eat out of both sides of his mouth in this situation, that fact alone does not add life to these transactions which otherwise appear to have been carried out on paper only.

Possibly there was more substance to the trust and partnership than meets the eye, and possibly some of the unfavorable inferences drawn from the evidence presented could be explained. But, if so, it was within petitioners' province to show it by competent evidence; and this they have failed to do. We find as an ultimate fact that the purported trust and partnership established by petitioners lacked substance and were entities on paper only, and that petitioners remained the true owners of the property giving rise to the income reported by the partnership. Consequently, petitioners are taxable on the entire income reported by the partnership.

The cases relied on by both parties were for the most part decided on their own facts. See *Whayne* v. *Glenn*, 222 F. 2d 549 (C.A. 6, 1955), *Miller* v. *Commissioner*, 203 F. 2d 350 (C.A. 6, 1953), remanding a Memorandum Opinion of this Court, *United States* v. *Atkins*, 191 F. 2d 951 (C.A. 5, 1951), certiorari denied 343 U.S. 941, and *Rupple* v. *Kuhl*, 177 F. 2d 823 (C.A. 7, 1949), relied on by petitioners; and *Commissioner* v. *Culbertson*, *supra*, *Commissioner* v. *Tower*, 327 U.S. 280, *Helvering* v. *Clifford*, 309 U.S. 331, *Paster* v. *Commissioner*, 245 F. 2d 381 (C.A. 8, 1957), affirming a Memorandum Opinion of this Court, certiorari denied 355 U.S. 876, *Henry S. Reddig*, *supra*, and *Salvatore Apicella*, *supra*, relied on by respondent. We do not think the principles established by any of those cases requires a different conclusion here. They all serve to emphasize the importance of the circumstances surrounding the creation of the trusts and partnerships and the conduct of the parties in carrying out the various agreements in determining whether the trusts or partnerships will be recognized for tax purposes. Those cases can all be distinguished to some extent on their facts, although the facts that we have here are sufficiently similar to those in *Henry S. Reddig*, *supra*, decided for respondent, that to reach the opposite conclusion in this case would warrant some explanation.

*Decision will be entered for the respondent.*