LOUIS B. GINSBERG and GRACE GINSBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Ginsberg v. Commissioner
Docket No. 8044-71
United States Tax Court
T.C. Memo 1973-220; 1973 Tax Ct. Memo LEXIS 65; 32 T.C.M. (CCH) 1019; T.C.M. (RIA) 73220; October 9, 1973, Filed Bennet Kleinman, for the petitioners. Larry L. Nameroff, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in the income taxes of petitioners as follows: Year
Deficiency 1966
$14,189.51
1967
8,974.32
1968
5,885.69 2 The first issue presented for decision is the validity of a family partnership under section 704(e). [1] If we find the partnership to be bona fide, an alternative question is posed as to the reasonableness of petitioner Louis B. Ginsberg's salary as donor partner under section 704(e) (2). *66 FINDINGS OF FACT Petitioners are husband and wife and resided in Cleveland, Ohio, at the time their petition herein was filed. They filed joint income tax returns with the district director of internal revenue, Cleveland, Ohio, for the years 1966, 1967, and 1968. Grace Ginsberg is involved in this controversy only because a joint return was filed. All references hereinafter made to "petitioner" shall be deemed to mean Louis B. Ginsberg. Prior to January 1, 1958, petitioner owned and operated Bonn Machine & Tool Company (hereinafter "Bonn") as a sole proprietorship. Bonn was engaged in the business of manufacturing and selling metal parts for other companies on a subcontracting basis. 3 It employed an average of ten employees during the years in issue and utilized 17 or 18 machines such as turret lathes, drill presses, etc. Bonn had a considerable amount of goodwill during all the years in question but did not carry this on its balance sheet. Petitioner exercised overall administration of Bonn and was the only salesman and contact man. He approved quotations issued by his firm and signed all checks for Bonn. Karen Ginsberg (hereinafter "Karen") is petitioner's *67 daughter. She was 18 through 21 years of age and lived at home with her parents during all the years in question. On January 1, 1958, petitioner executed a "Declaration of Trust" and a "Partnership Agreement." By these documents, petitioner purported to transfer 15 percent of the assets and liabilities of Bonn to himself as sole trustee (with his wife, Karen's mother, as successor sole trustee) of a trust for the benefit of his then 10-year-old daughter, Karen, and to create a partnership [2] between himself in an individual capacity and himself as trustee. Petitioner's purpose in executing these instruments was to set up a "sort of nest egg" so Karen would have a sum of money which would belong to 4 her when she was older. The dispositive provisions of the declaration of trust provided that until the beneficiary (Karen) reached the age of 21, "no part of the income and/or corpus of the Trust Estate shall be used *68 for the maintenance, education or support of said Beneficiary, as long as the Settlor shall be living." [3] From the time Karen attained the age of 21 (or sooner after the settlor's death) and until she attained the age of 35, the trustee was directed to use all of the income and authorized in "his sole and absolute discretion" to use the corpus "for the maintenance, education and support of said Beneficiary." The trustee was authorized in "his sole and absolute discretion" to terminate the trust and turn over the entire estate to Karen at any time after she reached 21 or to Karen's issue or heirs-at-law (excluding petitioner) if Karen should die prior to 35. The corpus of the trust was to be paid to Karen when she attained the age of 35. The trustee was given broad discretionary powers in respect to the management and investment of the 5 trust estate, including the powers "to deal [with the trust property] in all respects as though the absolute owner thereof" and to invest "in * * * business, in association with any person, firm or corporation whatsoever, *69 including specifically the Settlor." The trustee was directed to keep complete records but they were available for inspection by Karen only after she reached 21. The declaration of trust contained the following exculpatory provisions: The Trustee shall not be liable to anyone claiming under this instrument for any loss resulting to the Trust Estate, or any portion thereof, by virtue of any transaction entered into by the Trustee in good faith under the provisions hereof. The Trustee is in no event to be liable for any error of judgment in any transaction entered into by the Trustee in good faith. The Trustee shall only be liable for his affirmative wrongdoing. The Beneficiary is hereby held and firmly bound to save and hold harmless said Trustee, from all loss, costs, damages, expenses and charges, public and private, and from all litigation, groundless or otherwise, not arising out of his own default or neglect, which he may incur or in which he may be concerned, arising out of the Trust Estate, this Trust Agreement, or the Trustee's assumption or performance of any of his duties hereunder, for all of which loss, costs, damages, expenses, charges and 6 litigation, *70 the Trustee shall have a lien upon the Trust Estate. * * * * * * The Settlor further requests and stipulates that the Trustee, as well as the Successor Trustee, shall not be required to render or file any inventories, appraisals or accountings of the holdings, management and operations of the within Trust Estate, nor shall the Executors or Administrators of either of them after their deaths, be required to file any such inventories, appraisals or accountings of the holdings, operations or management of said Trust Estate, except to the Settlor and the Beneficiary as herein provided. * * * [4]
The partnership agreement purported to establish the trust as a 15-percent partner in both capital and net profits and losses. It further provided as follows: (7) The partners shall have equal rights in the management and conduct of the partnership business. (8) At the end of each accounting year of the partnership and at such other times during the year as the partners shall mutually *71 determine, the partners shall have the right to withdraw their shares of partnership net profits for the year. All withdrawals of profits shall be made in the ratio of the partners capital accounts as set forth above. It is agreed, however, that profits will not be withdrawn when to do so would be contrary to the best 7 interests of the partnership business in the opinion of the working partners. * * * (10) The termination of any trust participating as a partner in this partnership shall not terminate the partnership, but the interest of the trust in the partnership shall abate by reason of such termination; and the trust shall be deemed to have withdrawn from the partnership as of the end of the month in which such termination occurs * * *. (11) Any partner including any trust shall have the right to withdraw from the partnership at any time upon giving ninety (90) days' notice in writing to the other partners. In such event, the partnership shall be dissolved and liquidated if notice in writing of the election to liquidate is given to the other partners within such period by partners who in the aggregate would be entitled to one-half or more of the partnership net profits *72 if the partnership were to continue after the withdrawal of such partner. If there shall be no election to liquidate, the withdrawing partner shall receive from the partnership the value of his or its capital account with all necessary credits and charges for net profits, net losses, withdrawals, distributions and contributions, determined as of the end of the month in which the ninety (90) day period elapses. The value of capital accounts shall be taken from the partnership books of account, without allowance for good will, trade names, patents, or other intangible assets, except for costs incurred by the partnership in the acquisition of such intangible assets as are reflected on the partnership books of account, and for the purpose of this paragraph the books of account shall be conclusive on all parties. 8 (12) Upon the death of a partner, the partnership shall not be terminated or dissolved notwithstanding any provision of law to the contrary, and the interest of the decedent in the partnership shall not abate by reason of his death. The partnership shall continue to carry on the business theretofore conducted by it and the decedent's estate shall continue to share in *73 the partnership profit and losses equally with the surviving partners. The estate of the decedent shall have no right by reason of the death of the decedent to demand any part of the current earnings other than by way of drawing account, or any part of the decedent's capital account, except as provided in the next paragraph. (13) In case of the death of a partner, the surviving partners shall have the right to redeem the interest of the estate of the decedent at any time upon the payment of the value of the capital account of the estate of the decedent as determined above, and the estate of the decedent may withdraw from the partnership at any time upon the terms previously provided. (14) In the event of the redemption of a partner's interest in the partnership pursuant to any of the foregoing paragraphs, the redemption price shall be paid in cash without interest in four (4) semi-annual installments commencing on a date ninety (90) days after the date hereinabove fixed for the valuation of the capital account of the withdrawing or deceased partner. (15) Except as hereinabove otherwise provided, the partnership shall continue from year to year; provided, however, that the partnership *74 may be dissolved and terminated at the end of any accounting year at the election of partners who, in the aggregate, are 9 entitled to at least fifty per cent (50%) of the partnership profits, or at any other time upon the mutual consent of all of the partners. No gift tax return was filed with respect to the trust transfer. [5]
Karen never contributed any capital nor performed any services for the partnership. Bonn's partnership returns of income reflect the following information: 1966
1967
1968 Gross receipts
$781,482.57
$527,548.62
$450,953.54
Ordinary income
176,858.10
103,343.52
63,454.21
Total assets
434,955.49
368,969.65
245,356.34 Petitioner's Capital Account Year
Capital account - Beginning of year
[6] Share of ordinary income during year Withdrawals during year
Capital account - End of year 1966
$ 5,346.49
$150,329.39
58,015.97
$ 100,309.48
1967
100,309.48
87,841.99
91,726.20
102,578.03
1968
102,578.03
53,936.07
111,094.39
51,547.39
*75 10 Trust Capital Account Year
Capital account - Beginning of year
Share of ordinary income during year
Withdrawals during year
Capital account - End of year 1966
$63,805.28
$26,528.71
$2,581.90
$ 87,602.02
1967
87,602.02
15,501.53
7,951.69
94,974.33
1968
94,974.33
9,518.14
4,018.21
100,232.08
The withdrawals indicated for the trust were limited to amounts needed to pay its income tax liabilities. ULTIMATE FINDING OF FACT The trust for the benefit of Karen was not a bona fide partner of Bonn during any of the taxable years at issue and the entire income of Bonn constitutes taxable income of petitioner. OPINION The first issue for decision is whether the Karen Ginsberg Trust is to be recognized for tax purposes as a bona fide partner in Bonn under the provisions of section 704(e).[7] The underlying purposes and objectives *76 of that section have been thoroughly reviewed by this Court on prior occasions and we see no need to repeat such review. See Adolph K. Krause, 57 T.C. 890 (1972), on appeal (C.A. 6, May 29, 1973). See also Ballou v. United States, 370 F.2d 659 (C.A. 6, 1966). The 11 question of the validity of the claimed partnership interest is ultimately one of fact to be determined in light of all the circumstances. It - must be established not only by the legal documents by which [it was] purportedly created but also by evidence showing that the trustee actually became a bona fide partner acting for the interests of the beneficiary of the trust rather than for the interests of the [donor]. [See Roy C. Acuff, 35 T.C. 162, 175 (1960), affirmed per curiam, 296 F.2d 725 (C.A. 6, 1961).] *77 The burden of proof is on the petitioners. Rule 32, Tax Court Rules of Practice.
Bonn's business required a substantial investment in plant, machinery, and equipment. Petitioners have not seriously attempted to dispute the fact that Bonn was a business in which capital was a material income-producing factor. Rather, their efforts have been directed toward persuading us that petitioner, as trustee, was a bona fide partner who satisfied the requirements to be treated as such. 12 We have carefully considered the entire record herein and have concluded, as our ultimate finding of fact reveals, that the trust for Karen should not be recognized as a partner of Bonn. In reaching this conclusion, we have taken into account the following elements, the listing of which should not be deemed exclusive or as implying any order of importance or relative qualitative significance: (1) Karen was a minor during practically the entire period in question and the petitioner was the donor, sole trustee (with broad powers of management and protected by broad exculpatory clauses) and only other partner. Cf. Ballou v. United States, supra; see Roy C. Acuff, 35 T.C. 162, 173 (1960). *78 Compare Sanford H. Hartman, 43 T.C. 105, 119 (1964), where there was a third party as trustee who contributed vital services to the partnership. In this connection, we recognize that the fact that petitioner was both the donor and trustee is not in and of itself sufficient. See Kuney v. United States, 448 F.2d 22 (C.A. 9, 1971). But it is a factor which may properly be taken into account. See Roy C. Acuff, supra, 35 T.C. at 173. Cf. Irvine K. Furman, 45 T.C. 360, 364 (1966), affd. 381 F.2d 22 (C.A. 5, 1967). 13 (2) There is no evidence that petitioner, as trustee, ever actively represented the trust as an independent factor in the management and operations of the business. Indeed, there is evidence to the contrary during the years in issue. Thus, at the beginning of the taxable year 1966, the petitioner, with a partnership interest of at least 85 percent, had a capital account of only $5,346.49, as compared with the trust's capital account of $63,805.28. At the end of 1968, the corresponding figures were $51,547.39 *79 for petitioner and $100,232.08 for the trust. Moreover, during all the years at issue, petitioner deemed it advisable to withdraw increasingly large sums of money from his share of the business while leaving substantially all of the trust's earnings at the risk of the business. In both 1967 and 1968, petitioner withdrew amounts in excess of his share of the partnership income, although concededly he did not overdraw his capital account. Such disparity in withdrawals belies petitioner's assertion that the trust's share of partnership profits was not withdrawn because the earnings of the partnership were needed in the business and that petitioner actively protected the interests of Karen in accordance with his fiduciary 14 obligations. Cf. Roy C. Acuff, supra, 35 T.C. at 176; Henry S. Redding, 30 T.C. 1382, 1394 (1958); sec. 1.704-1(e) (2) (vii), Income Tax Regs. The fact that no withdrawals of the trust's purported share of profits were made for independent purposes of the trust beyond amounts needed to pay its tax liabilities serves, among other factors, to distinguish this case from Sanford H. Hartman, supra, 43 T.C. at 119, *80 and Jack Smith, 32 T.C. 1261, 1270 (1959). [8] Finally, it is significant that the change in Bonn's operations from sole proprietorship to partnership affected neither the business nor petitioner's powers of overall administration. Roy C. Acuff, supra, 35 T.C. at 175. (3) Aside from the partnership and fiduciary returns, there is no evidence that Karen's trust was ever held out as a partner to customers or creditors of the partnership or banks with which the partnership did business or by the filing of any certificate of doing business. Compare Finlen v. Healy, 187 F. Supp. 434, 436 (D. Mont. 1960); Jack Smith, supra, 32 T.C. 1269-1270, where such disclosures occurred. [9] See 15 also footnote 5, supra, relating to the absence of a gift tax return. (4) The partnership agreement did not provide for any right in the trust to sell its partnership interest and that right was severely limited under Ohio law to simply the right in any third party acquiring such interest to *81 share in the profits of the ongoing business. See Ohio Revised Code, sec. 1775.26. To be sure, the trust could withdraw from the partnership, but, in that event, the trust's right of payment was limited to the value of its capital account "without allowance for good will, trade names, patents or other intangible assets, except for costs incurred by the partnership." Given the fact that the partnership, by petitioner's own testimony, had a considerable value attributable to goodwill, these limitations were substantial. Cf. Henry S. Reddig, supra, 30 T.C. at 1393. We are satisfied, in light of the foregoing, that this case falls within the ambit of Ballou v. United States, supra, and Henry S. Reddig, supra.Petitioners seek to distinguish Reddig on two grounds. First, they point to the specific provision 16 in the Reddig trust agreement that, in the event of any conflict between the trustee in such capacity and in his capacity as manager, proprietor, or partner, the latter would prevail. See 30 T.C. at 1392. Given the broad exculpatory clauses in the trust instrument involved herein, we consider this distinction unwarranted. *82 Secondly, petitioners seize upon the provision in the Reddig trust instrument according the right in the trustee to make distributions of income or corpus to persons "with whom such beneficiary shall reside." See 30 T.C. at 1392. It is arguable that petitioner had substantially the same right under the provisions of Ohio law, where the parents of a minor are considered as the natural guardians of his person and property. Ohio Revised Code sec. 2111.08; Cf. Restatement, Trusts (2d), sec. 182, comment "d". In any event, even if such a distinction exists, we do not consider it sufficient to tip the scales herein. Nor do we agree the Ballou v. United States, supra, is distinguishable merely because, as petitioners point out, the trustee was prohibited from performing services for the partnership and the trust's partnership 17 interest could not be sold without the consent of the other partners. As we have already pointed out, petitioner herein does not appear in fact to have exhibited, as trustee, any independent capacity for action in respect of the partnership and the right of sale of the purported partnership interest of the trust was severely limited. *83 Miller v. Commissioner, 183 F.2d 246 (C.A. 6, 1950), reversing in part and affirming in part a Memorandum Opinion of this Court, and 203 F.2d 350 (C.A. 6, 1953), remanding a further Memorandum Opinion of this Court, relied upon by petitioners, was decided on its own facts and is clearly distinguishable. See Ballou v. United States, supra, 370 F.2d at 663; Roy C. Acuff, supra, 35 T.C. at 177. We hold that the trust was not a bona fide partner in Bonn and that petitioner is taxable on the entire income of the business. In light of this holding, it is unnecessary for us to consider the alternative issue of the reasonable compensation of petitioner. Decision will be entered for the respondent. Footnotes
1. All Code references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
2. The use in these findings of such terms of designation as "partnership," "partners," and "gift" or other words and phrases is solely for the Court's convenience. Their use implies no findings per se as to the validity of the transactions at issue herein. ↩
3. The instrument is silent as to whether the income and/or corpus could be used for other purposes during this period. ↩
4. There appears to be no provision in respect of such filings with the Settlor or Beneficiary other than Karen's right of inspection after attaining the age of 21, which has already been noted. ↩
5. At the trial, petitioner's counsel indicated that he believed a gift tax return was filed and the record was left open for the return to be submitted. None was submitted, however, and the only reference to this element is contained in the statement in petitioners' reply brief that "a gift tax return may not have been required." There is no evidence in the record upon which to determine whether a gift tax return was required. ↩
6. Petitioner also drew $7,500 in salary from the alleged partnership for each of the years indicated. Additionally, the reconciliation of the purported partners' capital accounts on the returns reflects shares of certain losses and unallowable deductions not pertinent to the issues involved herein. ↩
7. SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. * * * (e) Family Partnerships. - (1) Recognition of interest created by purchase or gift. - A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person. ↩
8. The same is true of James N. Bennett, T.C. Memo. 1962-163↩. 9. See also Jelindo A. Tiberti, T.C. Memo. 1962-174↩.